UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                                      CRIMINAL ACTION NO. 3:19-CR-19-BJB

BRYAN DOUGLAS CONLEY                                         DEFENDANT

## UNITED STATES PRETRIAL MEMORANDUM
## ELECTRONICALLY FILED

The United States submits this pretrial memorandum for the trial currently scheduled in

Louisville for July 18, 2022.

### A.  STATUTES INVOLVED AND ELEMENTS OF OFFNESES.

**Interstate Transportation for Prostitution (18 U.S.C. 2421(a)) (Count 1)**

1. The Defendant knowingly transported, or attempted to do so, any individual in interstate or foreign commerce in any Territory or Possession of the United States; and
2. The purpose of the travel was for the individual to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.

**Kidnapping by decoy and inveigle (18 U.S.C. § 1201(a)(1)) (Count 2)**

1. The defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away;
2. The defendant held R.W. for ransom, reward, or for any other reason;
3. In committing or in furtherance of the commission of the offense:
    a. R.W.  was transported in interstate or foreign commerce,
    b. The defendant traveled in interstate or foreign commerce,
    c. The defendant used the mail; or
    d. The defendant used a means, facility, or instrumentality of interstate or foreign commerce; and
4. The defendant acted unlawfully, knowingly, and willfully.

**Bank Fraud (18 U.S.C. § 1344) (Count 3)**

1. That the defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution or knowingly executed a scheme to obtain the money, funds or other property owned by or under the control of a financial institution, by means of material false or fraudulent pretenses, representations or promises as detailed in Count 3 of the indictment;
2. That the defendant did so with the intent to defraud a financial institution; and
3. That the financial institution was insured by the Federal Deposit Insurance Corporation or National Credit Union Administration (NCUA).

**Aggravated Identity Theft (18 U.S.C. § 1028A ) (Count 4)**

1. Knowingly transferred, possessed, or used
2. Without lawful authority
3. Means of identification of another person
4. During and in relation to a violation of Bank Fraud in Count 3.

**Interstate Ransom Threat  (18 U.S.C. § 875(c) ) (Count 5-14)**

1. The Defendant knowingly sent a message in interstate or foreign commerce; and
2. Containing a true threat to kidnap any person or to injure the person of another.

**B.  STATEMENT OF UNDISPUTED AND DISPUTED FACTS**

Beginning in November 2018, the Defendant, Bryan Douglas Conley, used aliases and an online dating application, PlentyofFish, to lure and mislead victims to  travel with him across state lines for the purpose of engaging in illegal sexual activity with a minor, A.Y., or for the purpose of ransoming the parents of an adult victim, R.W.   Conley used the online profiles of "Bryant" and "Lance" to lure and entice the victims into traveling with Conley in his car.  He offered to pay the minor victim money for sexual activity with himself and others and abandoned her at a gas station in Texas, stealing her purse and phone.  In January 2019, Conley used an online profiled to inveigle and decoy an adult victim.  He made false and misleading statements to her including that he was a modeling agent and ultimately that he was law enforcement.  He

2

kept the victim in his car and ultimately began issue ransom demands to her parents. FBI dropped a ransom in a bag and the defendant was witnessed picking it up. He was also arrested a short time later with the ransom and the victim's phone in his possession. The victim was safely rescued by the FBI in the back of the defendant's car.

## MANN ACT

This charge involved a minor victim, A.Y. , who was 17 at the time she met Conly on PlentyofFish in November 2018. Conly used a false identity named "Bryant" to communicate with A.Y. to convince her to come to Memphis and have sex for money.

A.Y. wanted to get away from home and set up her profile on PlentyOfFish looking for a "sugar daddy." On November 8, 2018, she received communications from a light-skinned black man supposedly from Memphis named "Bryant". Bryant wanted A.Y. to come to Memphis to have sex with him and he would pay her for it. The two texted and made travel plans. On November 10, 2018, Bryan Conley picked up A.Y. in a public park in Ada, Ohio, in a grey Ford Taurus. They drove to LaGrange, Kentucky. During the drive, Conley tells her that Bryant will pay even more money if she has sex with Conley. Conley stays at the Super 8 motel in LaGrange (room 210). Conley and A.Y. have sex. Conley and A.Y. traveled toward Bowling Green, Kentucky, and then returned to the Super8 motel in Oldham County. While on the way to Bowling Green, Conley instructed A.Y. to use PlentyOfFish to find someone who will have sex with her while Conley records it with his phone. Conley offered her payment to perform the act. They again returned to the Super 8 motel and have sex again and ordered Pizza.

The next day, November 11, 2018, Conley and A.Y. traveled to Jackson, Tennessee. Conley had A.Y. find someone on PlentyOfFish to have sex with. R.B. agreed. A.Y. and Conley arrived at R.B.'s apartment. Conley stood in the bedroom room and provided instruction

to while R.B. and A.Y. had sex.  During this time, Conley held his cell phone as if he was videotaping.  Conley and A.Y. left and traveled to Hot Springs, Arkansas.   They both slept in Conley's car.  On Monday, November 12, 2018, Conley and A.Y. traveled to Lake Catherine (Texas) and again had sex in the car.  A.Y. told Conley she wanted to go home.  She refused to have sex with Conley and was upset.  Conley masturbated.  Shortly thereafter, Conley arrived a gas station and A.Y. got out of the car.  Conley drove away leaving A.Y. at the gas station in Will Point, Texas.  Conley stole her purse and cell phone.

On November 14, 2018, SA Jimmy Burkett, Texas Department of Public Safety, interviewed A.Y.  SA Burkett confirmed that Conley rented a room at the Super 8 Motel in LaGrange, KY, under his real name and his phone number ending 7423.

### **Kidnapping, Bank Fraud, Agg ID theft, and Threats:**

Conley inveigled and decoyed the victim, R.W., by false representations, promises, and other deceitful means.  Conley lured R.W. to come meet him, under the false pretense that she was going to meet someone named "Lance" for a romantic relationship.  As R.W. and Conley continued interaction, Conley made false representation that he was going to help R.W. become a model.  Later while Conley had R.W. in his control, Conley also falsely told the R.W. he was an undercover police officer and that she was the target of human trafficking ring.  He elaborated that it was not safe for her to return home or work.

In 2019, R.W. was an adult female who lived at home with her parents who have custody of her two children.  R.W. worked at a nursing home.  All her life, R.W. has suffered from depression and anxiety and is treated with medication.  R.W. participated in special education in her youth and was diagnosed as severely emotionally disturbed.  R.W. separated from a

relationship in December 2018.  She was not able to independently care for herself and her children and has an IQ in the 80s.

Conley used the profile "Lance" communicated with R.W. on January 27 and 28.  R.W. traveled to meet "Lance" around Dover, Tennessee.  When she arrived she met Bryan Conley who told her "Lance" could not make it.  Conley said he was Lance's modeling agent.  Conley told R.W. she could be a model and set up another time for them to meet.

On another occasion, Conley told R.W. that she could be a paid model and met with her on another day in Brentwood to prepare her photo portfolio to use for modeling jobs.  Conley gave her a drink containing a funny tasting substance from Conley's Yeti coffee mug.  She said Conley took clothed, nude, and sexual photos with her as part of her "portfolio".  She went home that night. Throughout her interview, R.W. said she was really interested in meeting Lance (the mode) but never did.  Conley stole R.W. purse during this encounter and attempted to use her credit card and access her bank accounts.

R.W. again traveled to meet "Lance" but again met Conley near Ft. Campbell.  R.W. stayed late to meet "Lance".  Conley told her that "Lance" had been arrested and would not show up.  R.W. returned home late.

On January 29, 2019, Conley told her via text about a photo shoot in Louisville with Lance.  The photo shoot would involve some clothed photos with her tied up (bondage).  She drove toward Louisville and ran out of gas because she said Conley told her Lance had her wallet.  She met Conley at the Shepherdsville Kroger.  R.W. said Conley took her phone.  R.W. also stated she drank a substance in a Yeti container that tasted funny.  Conley told her it was Gatorade (or a sports drink) and she needed to drink it as part of her modeling contract for advertising money that would be paid to both of them.  She said it made her sleep and she fell in

and out of sleep.  She said she was bound at her legs, feet, and gaged with rope and they Conley duck taped her at some state park (possibly mammoth cave).  Conley told her it was part of the photo shoot.  She said she was bound for maybe 3 or 4 hours.  She said Conley removed a gold necklace from her neck.   She said she intended to go home the evening of January 29, 2019, after the photo shoot.  Conley changed his story telling her that Lance and he were undercover police and that she was the target of human trafficking at it was not safe for her to go home.  She was told by Conley that he was retrieving her wallet when he was retrieving the ransom.  He returned her wallet, but cards and other items were missing.

From the perspective of the FBI the case began on January 29, 2019 at approximately 1:45 PM CST when the Brentwood Police Department (BPD), located in Brentwood, Tennessee, received a call from R.W.'s mother, who reported her daughter, R.W., had been kidnapped. R.W.'s mother telephone number ending 4651 began receiving violent text messages from R.W.'s cellular telephone ending 5512 demanding ransom be paid for R.W.

Bryan Conley used R.W.'s cellular telephone to communicate that he kidnapped R.W., and directed R.W.'s mother to pay a ransom of $20,000 to ensure R.W.'s safe release.  Conley instructed R.W.'s family to start driving towards Toledo, OH, where she would receive additional instruction.

The FBI quickly became involved with R.W.'s family and FBI negotiators assisted R.W.'s family.  FBI computer scientists were able to extract detail of text messages from R.W.'s parents phones.  The following are examples of violent SMS messages from R.W.'s phone ending 5512 to R.W.'s mother's phone ending 4651:

> R.W.   5512:   You have ten minutes to be on road or I sell her ass
>          5512:   One more lie she's dead
>          5512:   In 1 hour they will start raping her ass
>          5512:   You listen or I send you pic of her body

Conley told R.W.'s family that R.W. was being held at a residence in Toledo, Ohio, but later changed the location to Cincinnati, OH.   Conley refused to allow R.M.'s mother to talk, but he sent a proof of life photograph at approximately 10:00 PM CST. The proof of life photograph depicted R.W. inside of an unknown vehicle at the time with what appeared to be binding material around her mouth partially covered with a multi-colored blanket.

Conley and R.W.'s family agreed to a ransom of $400 and jewelry.   The FBI documented the serial numbers for the ransom money and photographed the jewelry.  R.W.'s father was instructed to start travelling towards Toledo, OH to drop off the newly negotiated ransom.

At approximately 8:54 AM, 29 January 29, 2019, an unidentified user at the time attempted to log in to R.W.'s USAA bank account. The individual provided R.W.'s correct social security number but failed to correctly answer any of the security questions. At 11:31 AM there was a successful login to RW.'s USAA bank account using her telephone number.

The telephone number associated with the first attempted login was telephone number ending 7423. An exigent request to Sprint Corporation revealed, 7423 was registered to Bryan Conley's wife.   Conley's wife also had a gray 2014 Ford Taurus registered to her at a residence occupied by Bryan Conley in Tennessee.  The the time of arrest, the FBI recovered a phone with telephone number ending 7423 in Conley's car.

On January 29, 2019, at approximately 12:02 AM, a witness at Walmart in Oak Grove, KY, advised a white male attempted to use R.W.'s credit card. After having the credit card denied, the unidentified white male left in a grey Ford Taurus. A review of surveillance video by law enforcement confirmed that a white male left in a grey Ford Taurus.

During the initial communications between Conley and R.W.' s family, Conley offered as proof he had R.W. by providing an address where her Toyota Prius was left.  Conley told R.W's family the R.W.'s Toyota Prius was parked at 185 Adam Shephard Parkway, Shepherdsville, KY. On January 30, 2019, the FBI located R.W.'s Toyota Prius was located at Kroger, located at 185 Adam Shephard Parkway, Shepherdsville, KY.

Emergency phone location orders were obtained for R.W.'s  and the phone used by Bryan Conley.  The phone information showed that Bryan Conley and R.W.'s telephones were in close proximity throughout the duration of the pings and appeared to be traveling together.

At approximately 2:25 PM CST on January 30, 2019, while FBI Special Agents were located with the father of R.W., in the state of Tennessee, the father received a text from R.W.'s phone with the following text, "One more lie she's dead".  Location information provided by the cellular carrier, Verizon Wireless, placed R.W.'s phone at the following coordinates in the state of Kentucky at 2:25 PM CST on January 30, 2019:  36.96229889 LAT/-87.454605 LONG. These coordinates plot in vicinity of Hopkinsville, Kentucky.

On January 30, 2019, at approximately 3:30 PM CST, the FBI dropped a ransom payment in a McDonald's food bag and left it outside to the Flying J Travel Center, located at 18750 Herndon Oak Grove Road, Oak Grove, KY 42262.  The location of the drop was sent via text to R.W.'s phone.

On January 30, 2019, at approximately 5:00 PM CST, FBI Louisville Division observed Conley retrieve the ransom payment from behind a dumpster at the Flying J Travel Center in Oak Grove, KY.  Conley then got into a Ford Taurus and left the Flying J Travel Center.

FBI Louisville Division followed Conley in the 2014 Ford Taurus to a Marathon Gas Station located at 802 South Main Street, Leitchfield, KY 42754.  FBI arrested Conley at the

Marathon Gas Station. At the time of Conley's arrest, FBI Special Agents removed R.W.'s phone from Conley's person.  R.W. was also in the back seat of the Ford Taurus.

Verizon Short Message Service (SMS) detail records revealed all SMS sent from R.W.'s telephone number ending 5512 on January 29, 2019, through January 30, 2019 at 3:08 AM CST were traversed through Verizon switches located in or around Alpharetta, Georgia and Duluth, Georgia.  Therefore, the ransom communications traveled in interstate commerce.

The FBI executed a search of the Conley's Ford Taurus.  Agents recovered duct tape, rope, condoms, zip ties, a red yeti mug, and Nyquil sleeping liquid.  R.W.'s purse, social security card, identification cards, and credit card were also recovered. The FBI recovered R.W.'s phone from Conley and documented the serial numbers were the same that were left in McDonald's bag.  The jewelry provided as the ransom was also recovered from the front seat of Conley's car.

### C.  A SEPARATE STATEMENT OF EACH UNRESOVLED SUBSTANTIVE ISSUE OF LAW, WITH DISCUSSION AND CITATIONS TO AUTHORITIES

None known at this time.

### D.  A STATEMENT OF EVIDENTIARY ISSUES WHICH IT IS REASONABLY BELIEVED WILL BE RAISED AT TRIAL TOGETHER WITH CITATIONS TO THE FRE AND AUTHORITIES IN SUPPORT OF POSITION TAKEN

The United States filed a motion to admit flight as substantive evidence of guilt.  During the pendency of the prosecution and prior to a superseding arraignment date, Conley removed a GPS monitoring device attached to his ankle by U.S. Probation.  Conley stole a television from a hotel in Cave City.  FBI initiated a fugitive man-hunt and Conley was arrested a few days later in Hamilton County, Ohio.

### E.  A STATMENTOF AN KNOWN OR REASONABLY ANTICPATED POTENTIAL TRIAL PROBLEMS, OR OTHER ISSUES WHICH MAY ASSIST THE COURT IN TRYING THE CASE.

None known at this time.

### F.   PROPOSED SUBSTANTIVE AND SPECIAL JURY INSTRUCTIONS WITH CITATIONS TO AUTHORITIES.

### COUNT 1 (INTERSTATE TRANSPORTATION FOR PROSTITUTION) (18 U.S.C. 2421(a).

Count 1 of the indictment charges the defendant with transportation for prostitution or sexual activity for which the defendant or any other person identified in the indictment could have been charged with a criminal offense. In order for you to find the defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:

1. The defendant knowingly transported or attempted to transport, the person identified in the indictment in interstate commerce; and

2. At the time of transportation or the attempted transportation, the defendant intended that the person identified in the indictment would engage in prostitution or sexual activity for which the defendant or any other person identified in the indictment could have been charged with a criminal offense.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt as to the charge you are considering, then you should find the defendant guilty of that charge.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt as to the charge you are considering, then you should find the defendant not guilty.

**Authority:**   Fed. Crim. Jury Instr. 7th Cir. 2421 (2020 ed.)

## COUNT 2 (KIDNAPPING BY INVEIGLE AND DECOY) (18 U.S.C. § 1201)

It's a Federal crime for anyone to kidnap, seize, confine, inveigle, decoy, abduct, or carry away another person and then transport that person in interstate commerce.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

(1) the Defendant knowingly and willfully kidnapped, seized, confined, inveigled, decoyed, abducted or carried away the victim, R.W.;

(2) the Defendant kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away the victim with the intent to collect a ransom, reward, or other benefit and held the victim for that reason; and

(3) the victim was willfully:

    a.  transported in interstate or foreign commerce regardless of whether the person was alive when transported across a state boundary;

    b.  the defendant traveled in interstate or foreign commerce; or

    c.  used the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

To "kidnap" a person means to forcibly and unlawfully hold, keep, detain, and confine that person against the person's will. Involuntariness or coercion related to taking and keeping the victim is an essential part of the crime.

To "inveigle" a person means to lure, or entice, or lead the person to do something by making false representations or promises, or using other deceitful means.

To "Decoy" means enticement or luring by means of some fraud, trick or temptation."

11

The Government doesn't have to prove that the Defendant committed the kidnapping for ransom or any kind of personal financial gain. It only has to prove that the Defendant intended to gain some benefit from the kidnapping.

The defendant need not use overt force to accomplish his purpose. He may use deceit and trickery. Inducing an individual by misrepresentation to do something can constitute interfering with and exercising control over another.

"Interstate commerce" means business or travel between one state and another.

A person is "transported in interstate commerce" if the person is moved from one state to another, in other words, if the person crosses a state line.

The Government does not have to prove that the Defendant knew he took the victim across a state line. It only has to prove the Defendant was intentionally transporting the victim.

**Authority:**  S3 Modern Federal Jury Instructions-Criminal 49 (2022)

## COUNT 3 (BANK FRAUD) (18 U.S.C. § 1344)

The defendant is charged with the crime of bank fraud. For you to find the defendant guilty of bank fraud, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution or knowingly executed or attempted to execute a scheme to defraud to obtain

money or other property owned by or in the control of a financial institution by means of false or fraudulent pretenses, representations or promises;

Second, that the scheme related to a material fact or included a material misrepresentation or concealment of a material fact;

Third, that the defendant had the intent to defraud; and

Fourth, that the financial institution was federally insured.

Now I will give you more detailed instructions on some of these terms.

A "scheme to defraud" includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.

The term "false or fraudulent pretenses, representations or promises" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth. They include actual, direct false statements as well as half-truths and the knowing concealment of material facts.

An act is "knowingly" done if done voluntarily and intentionally, and not because of mistake or some other innocent reason.

A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension.

To act with "intent to defraud" means to act with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself or to another person.

It is not necessary that the government prove all of the details alleged concerning the precise nature and purpose of the scheme or that the alleged scheme actually succeeded in

defrauding anyone or that someone relied on the misrepresentation or false statement or that the defendant benefitted personally from the scheme to defraud the financial institution or that the financial institution suffered a loss.

If you are convinced that the government has proved all of the elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of the elements, then you must find the defendant not guilty of this charge.

**Authority**:  6TH CIRCUIT JURY INSTRUCTIONS 10.03

### COUNT 4 (AGGRAVATED IDENTITY THEFT) (18 U.S.C. § 1028A)

Title 18, United States Code, Section 1028A makes it a crime to transfer, possess, or use a means of identification during and in relation to certain other crimes such as Bank Fraud. For you to find the defendant guilty, the government must prove each of the following beyond a reasonable doubt:

First, that the defendant transferred, possessed, or used,

Second, without lawful authority;

Third, a means of identification of another person;

Fourth, that the defendant did so during and in relation to Bank Fraud as alleged in Count 2; and

Fifth, that the defendant did so knowingly.

The government must prove that the defendant knew the particular numbers (or identifiers) belonged to another individual.

"Means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any -

(A) name, social security number, date of birth, official State or government

issued driver's license or identification number, alien registration number,

government passport number, employer or taxpayer identification number;

(B) unique biometric data, such as fingerprint, voice print, retina or iris image,

or other unique physical representation;

(C) unique electronic identification number, address, or routing code; or

(D) telecommunication identifying information or access device.

"Access device" means any card, plate, code, account number, electronic serial

number, mobile identification number, personal identification number or other

telecommunications service, equipment, or instrument identifier, or other means of account

access that can be used, alone or in conjunction with another access device, to obtain money,

goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other

than a transfer originated solely by paper instrument).

 "Without lawful authority" means without a form of authorization recognized by

law.

**Authority:**  Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § 1028A (Emily Deck Harrill, ed., 2018 Online Edition).

## <u>COUNTS 5 – 14 (INTERSTATE THREATS) (18 U.S.C. § 875(c))</u>

Title 18, United States Code, Section 875 makes it a crime to transmit in interstate

commerce a threatening communication. For you to find the defendant guilty, the government

must prove each of the following beyond a reasonable doubt:

First, that the defendant knowingly transmitted a communication in interstate or

foreign commerce;

Second, that the defendant subjectively intended the communication as a threat; and

Third, that the content of the communication contained a "true threat" to kidnap or injure.

To prove the second element of a § 875(c) conviction, the Government "must establish that the defendant transmitted the communication 'for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat,' or, perhaps, with reckless disregard for the likelihood that the communication will be viewed as a threat."

To prove the third element of a § 875(c) conviction, "the Government must show that an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret it as a serious expression of an intent to do harm."

While the government must prove that the communication was transmitted in interstate commerce, the government need not prove that the defendant knew the communication would be transmitted in interstate commerce.

While the government must prove that the communication was transmitted in interstate commerce, the government need not prove that the defendant knew the communication would be transmitted in interstate commerce.

**Authority:** Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* **§ 875 INTERSTATE THREATENING COMMUNICATIONS** 1028A (Emily Deck Harrill, ed., 2018 Online Edition).
.

### G.   PROPOSED VOIR DIRE QUESTIONS

1.    This case was investigated by FBI, Texas Department of Public Safety, Tennessee Bureau of Investigation, Louisville Metro Police, Brentwood Tennessee Police, and the Hamilton

County Ohio Sheriff's Office.   Has anyone had any contact, one way or another, good or bad, with this or any other law enforcement agency?

2.      There will be local law enforcement and federal agents testifying in this case. Has anyone had a really good or bad experience with the United States Attorney's office, a police officer, or federal agent-even something like getting a traffic ticket you did not think you deserved-that you think would affect your ability to listen to his or her testimony and give it the same weight as any other witness?

3.      Has anyone served in law enforcement in his or her community or elsewhere?  Family members?

4.      Have any of you ever been the victim of crime, or do you have a friend or family member who has been the victim crime?  Has anyone had an elderly loved one be the victim of theft by a domestic worker or senior health care provider?    Has anyone invested or been the victim of investment fraud?

5.      You will likely hear testimony from several witnesses who are government employees. Can you fairly evaluate the credibility of government witnesses by considering all available evidence in determining if those witnesses are truthful in their testimony?

6.      At the end of the case the Court will instruct you on the elements of each offense.  Those are the facts that the government must prove to you beyond a reasonable doubt.  That is their burden.  Will any of you hold the government to a different burden based on your expectations or require the government to prove to you something that is not in the instructions.  In other words, can you convict someone if the government has proven all the elements of the crime, but has not proven something else that you may be wondering about?

7.      Do all of you understand that you must set aside any personal feelings you may have about what the law ought to be if they conflict with the law contained in the Court's instructions? Is there anyone who thinks that they will not be able to follow the law that the Court gives you in the instructions?

8.      Are any of you employed by a law enforcement agency, or do you have friends or family members employed by law enforcement agencies?

9.      Have you or a close friend or family member ever been arrested or charged with a crime?

10.     Have you or a close friend or family member ever testified for a defendant in a criminal trial?

11.     Have you or a close friend or family member ever served time in a jail or prison?

12.     Have any of you ever served on a jury before?

13.     If you have served on a jury before, was it a civil or criminal case?

14.     If you have served on a criminal jury before, did you deliberate and reach a verdict in the case?

15.     If you did deliberate and reach a verdict, what was the verdict in the case?

16.     If you served on either a criminal or civil jury before, did you serve as the foreperson?

17.     If you served on either a criminal or civil jury before, is there anything about that experience that would prevent you from listening to the evidence in this case and bringing back a verdict based only on the evidence?

18.     Do you understand that in federal court, the punishment a defendant receives, if any, is to be imposed by the Court and your verdict must in no way be affected by your concern for what punishment would be proper?

19.     Does anyone work or have a family member that works for law enforcement?

19.     Do you understand that the duty of the Government is to prove guilt to the exclusion of a

reasonable doubt, but the government is not required to prove guilt beyond all possible doubt?

20.     Do you understand that a defendant on trial is entitled to a presumption of innocence

however, as with all presumptions, it may be overcome by competent evidence?

21.     Do you understand the law makes no difference between direct and circumstantial

evidence and the weight to be given to it; that the burden is one of proof beyond reasonable

doubt.  Direct evidence is simply evidence like the testimony of an eyewitness which, if you

believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you

believed him, that would be direct evidence that it was raining.  Circumstantial evidence is

simply a chain of circumstances that indirectly proves a fact.  If someone walked into the

courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that

would be circumstantial evidence from which you conclude that it was raining.

22.     Are there any of you who, because of religious, philosophical, or any other reason, do not

feel you could sit in judgment of these facts and vote to return a verdict of guilty regardless of

the proof in this case?

23.     Are there any of you who have difficulty hearing, seeing, or sitting for long periods of

time?

24.     Are there any of you that have events in your life presently that would distract you or

divert your attention from the testimony and evidence of this case?


                    Respectfully submitted,

                    MICHAEL A. BENNETT
                    United States Attorney



                              19

 s/Joshua Judd_____
Joshua Judd
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky  40202
PH:  (502) 582-5911

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel for Bryan Conley.

s/Joshua Judd_____
Joshua Judd
Assistant U.S. Attorney