UNITED STATES DISTRICT COURT
WESTER DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                           Plaintiff<br><br>v.<br><br>BRYAN DOUGLAS CONLEY,<br><br>                           Defendant. | Case No. 3:19-CR-00019-DJH-RSE<br><br>*Electronically Filed* |

_____

**MOTION IN LIMINE TO EXCLUDE CERTAIN TEXT MESSAGES**
_____

Comes now Defendant Bryan Douglas Conley, by and through counsel, and hereby moves this Court to exclude certain text messages allegedly sent by Mr. Conley to K.C. and Elizabeth Heather Glass. The substance of these unauthenticated text messages are irrelevant and, even if relevant, their probative value is substantially outweighed by the risk of causing unfair prejudice, confusing the issues, and misleading the jury. Further, the text messages are inadmissible hearsay.

K.C. is purportedly Mr. Conley's ex-wife. (*See* Exhibit 1, Affidavit of for Search Warrant in 3:19-MJ-453, at pp.18-19, 56-57.) According to an FBI affidavit for a search warrant in Western District of Kentucky Case No. 3:19-MJ-453-HBB, K.C. advised that she had been receiving threatening text messages from unknown numbers since spring of 2018. (*Id.*) One of those text messages, memorialized in the search warrant affidavit, reads:

> Hi
> You seem to never return
> my messages so further
> action will be taken
> So I know where you live

> Work
> Kids dr and school
> You fucked my husband and think you can get away with it?
> You have 30 day to get ahold of you x and answer immediately when I text back
> If not your family across the street and kids will pay for it.
> No cops.
> 10K
> A BBC
> Camera
> And hotel is what you will need

(*Id.*) According to the affidavit, a screenshot of the text message is included as an attachment to the search warrant affidavit. (*Id.*)

Elizabeth Heather Glass purportedly resides in Apex, North Carolina. In April 2018, Ms. Glass filed a police report for harassing phone calls. (*See* Exhibit 2, Apex, North Carolina Police Report.) In doing so, Ms. Glass reported that, after initially meeting Bryan Conley on an online gaming platform, they met in person in North Carolina and engaged in sexual relations. (*Id.*) Sometime thereafter, according to the police report, Ms. Glass began receiving harassing messages from Mr. Conley, but none of the messages were threatening. (*Id.*) Mr. Glass claimed that while she had returned his text messages on occasion, she had also told him to stop messaging her. (*Id.*) Ms. Glass reported that some of the harassing messages she received would come from phone numbers different from Mr. Conley's phone number. (*Id.*)

    1.    *The communications reported by K.C. and Ms. Glass are irrelevant.*

Federal Rule of Evidence 401 states "evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence

in determining the action." Generally speaking, relevant evidence is admissible, and irrelevant evidence is not admissible. F.R.E. 402. Here, the text messages reported by K.C. and Ms. Glass do not tend to make any fact that is of consequence in determining this action more or less probable. Thus, the substance of the text messages is irrelevant and the text messages are inadmissible.

> 2. *Even if the substance of the text messages is relevant, any probative value the text messages may have is substantially outweighed by the risk of causing prejudice, confusing the issues, or misleading the jury.*

Even if the Court determines the substance of the text messages are relevant, the F.R.E. 403 balancing test mandates the exclusion of the text messages in this case. Under F.R.E. 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury. . . ."

Here, while K.C. and Ms. Glass allege that Mr. Conley sent the text messages, they both admit the messages came from various numbers. Consequently, neither K.C. nor Ms. Glass can say with certainty that Mr. Conley sent the text messages. Because no one can prove Mr. Conley sent the text messages, the text messages' probative value is greatly diminished. On the other hand, the introduction of the text messages would cause unfair prejudice, confuse the issues, and mislead the jury. Permitting the introduction of the text messages would cause great prejudice to Mr. Conley because the jury would believe that if Mr. Conley sent such text messages, he should be punished for that behavior regardless of whether his charged conduct goes unproven. Introduction of these text messages would also confuse the issues and mislead the jury. Because no one can prove Mr. Conley sent these text messages, the admission of the text messages would result in a trial-within-a-trial just on the issue of authenticating the text messages and showing

3

they actually came from Mr. Conley. This would be a distraction from the actual issues in the case and an inefficient use of the Court's time and resources.

The government is likely to argue that the text messages are needed as a basis for establishing background information related to their investigation of Mr. Conley. However, the fact that law enforcement talked with K.C., or obtained a copy of the police report filed by Ms. Glass, is sufficient to show the background of their investigation. The government need not introduce the substance of the text messages reported by K.C. and Ms. Glass to law enforcement in order to establish the background of their investigation.

Because any probative value these text messages have is so greatly outweighed by the risk of causing unfair prejudice, confusing the issues, and misleading the jury, the Court should exclude the text messages from the trial in this matter.

   *3.*   *The text messages are also inadmissible hearsay.*

Neither K.C. nor Ms. Glass can say with certainty that Mr. Conley sent the text messages they reported to law enforcement. While both believe Mr. Conley sent the text messages, the text messages cannot be authenticated. Further, no recognized exceptions to the rule against hearsay would permit the admission of the text messages. (*See* F.R.E. 803.) Because the text messages cannot be authenticated as coming from Mr. Conley, they cannot be admitted under F.R.E. 804(b)(3) as a statement against interest. Moreover, because both K.C. and Ms. Glass claim – but cannot prove – Mr. Conley sent the text messages, the text messages themselves are actually hearsay within hearsay, as defined in F.R.E. 805, and would require an exception to each layer of hearsay before the government could admit the text messages. Simply put, the substance of the text messages amount to inadmissible hearsay and should be excluded.

For all of the reasons above, the Court should exclude from admission at trial the substance of the text messages reported to law enforcement by K.C. and Ms. Glass.

Respectfully submitted,

*/s/ Joshua F. Barnette*
Joshua F. Barnette
STITES & HARBISON PLLC
400 West Main Street, Suite 1800
Louisville, KY  40202
859.226.2318
jbarnette@stites.com
*Counsel for Bryan Douglas Conley*

**CERTIFICATE OF SERVICE**

I hereby certify that on 20th day of December, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Joshua F. Barnette*
Joshua F. Barnette

5