UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                Plaintiff<br><br>v.<br><br>BRYAN DOUGLAS CONLEY,<br><br>                                Defendant. | Case No. 3:19-CR-00019-DJH-RSE<br><br>*Electronically Filed* |

___

**DEFENDANT CONLEY'S RESPONSE IN OPPOSITION TO
GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE EVIDENCE OF FLIGHT**
___

Comes now Defendant Bryan Douglas Conley, by and through counsel, and hereby moves the Court to deny the government's motion in limine to introduce evidence of flight, filed in the record at Docket Entry 105.  Because the government has not met its burden to show sufficient evidence from which the Court can draw the required inferences with regard to flight evidence, the Court should deny the motion.

## BACKGROUND

On January 31, 2019, the government filed a Criminal Complaint alleging that Mr. Conley sent various interstate threatening messages from Kentucky to Tennessee on January 29 and 30, 2019.  (R. 1.)  Mr. Conley was arrested on those charges and, on January 31, 2019, made his initial appearance before United States Magistrate Judge H. Brent Brennenstuhl.  On February 1, 2019, a detention hearing was held, and the Court ordered Mr. Conley released on a $25,000 unsecured bond with certain pretrial release conditions.  (R. 4.)  Through a series of Orders from February 1 through February 8, 2019, the Court clarified that Mr. Conley's

electronic monitoring condition was to include active GPS monitoring with home detention once Mr. Conley arrived in Texas following release from custody in Kentucky. (*See* R. 7, R. 8, and R. 9.)

Within a month, on February 20, 2019, an indictment was filed in this case charging Mr. Conley with ten counts of interstate threats, in violation of 18 U.S.C § 875(c). (R. 11.) Shortly thereafter, through counsel, Mr. Conley waived personal appearance at the arraignment and entered a plea of not guilty to the charges. (R. 16, R. 18.)

On June 4, 2019, a superseding indictment was filed charging Mr. Conley with one count of kidnapping, one count of bank fraud, one count of aggravated identity theft, and ten counts of interstate threats. (R. 22.) The ten counts of interstate threats charged in the superseding indictment concerned the same substantive messages charged in the initial indictment. (*Compare* R. 11 *with* R. 22.) The Court set an arraignment hearing on the superseding indictment for June 20, 2019. On June 19, 2019, through counsel, Mr. Conley—like he did for the arraignment on the initial indictment—waived personal appearance and entered a plea of not guilty. (R. 26, R. 26-1, R. 27, R. 28.)

On June 21, 2019, the government filed a motion to revoke Mr. Conley's bond and for the issuance of an arrest warrant. (R. 29.) Notably, the United States Probation Office never issued a violation report or requested a warrant for any alleged violation of pretrial release or bond conditions. According to the government's motion, though, "Conley's ankle monitor was removed and last located near Smith[s] Grove, Kentucky." (*Id.*) The motion does not state when the ankle monitor was removed or when the ankle monitor was located in Smiths Grove, Kentucky. (*See id.*) Mr. Conley was arrested two days later, on June 23, 2019, in the Northern District of Ohio. (*See* R. 33.)

On September 18, 2019, a second superseding indictment was filed against Mr. Conley. (R. 45.) In addition to the charges contained in the first superseding indictment, the second superseding indictment included a charge of interstate transportation for prostitution. (R. 45.) The second superseding indictment remains the operative indictment.

On May 19, 2022, the government filed the instant motion in limine to introduce flight evidence at trial as evidence of Mr. Conley's guilt. (R. 105.) Mr. Conley opposes this motion for the following reasons.

## LEGAL ANALYSIS AND ARGUMENT

  1. *The government has failed to introduce any evidence to support a reasonable inference that Mr. Conley fled.*

Evidence of flight can only be introduced as evidence of guilt when the evidence of flight has "genuine probative value." *United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989).

> [P]robative value of flight evidence depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*Id.* at 1127. "All four inferences must be reasonably supported by the evidence." *Id.* Here, the government has failed to put forth any evidence—much less reasonable evidence—from which the Court may draw the necessary inferences.

The first inference that must be reasonably supported by the evidence is that actual flight occurred. The government's argument that Mr. Conley fled is mere speculation. The government contends that Mr. Conley "purposefully cut his monitoring device while on home confinement" and that Mr. Conley "physically removed his electronic ankle bracelet, missed his scheduled court date, and was apprehended in Ohio." (R. 105 at 2, 5.) The government's motion goes on to allege that "Conley's

3

electronic ankle monitoring device was located around Smith[]s Grove, Kentucky, near Bowling Green," and that the "FBI recovered a cut ankle monitor around Smiths Grove and a manhunt for Conley immediately began." (*Id.* at 2.) However, the allegations in the motion are not made true simply by the government making them.

As already noted, the government filed a motion to revoke Mr. Conley's bond and for the issuance of an arrest warrant on June 21, 2019. (R. 29.) That motion alleges, without any supporting evidence, that "[a]ccording [to] the United States Office of Probation, Conley's ankle monitor was removed and last located near Smith[]s Grove, Kentucky. Conley's failure to wear his ankle monitor, among other violations, constitutes a violation of his conditions of bond." (*Id.* at 1.) Simply put, that motion was wholly unaccompanied by any sworn affidavits or other exhibits purporting to support the allegations contained in the motion. (*See id.*) Nevertheless, the Court issued the arrest warrant on the same date. (*See* R. 30, R. 33.)

Moreover, on June 19, 2019, two days *prior* to the government filing its motion, Mr. Conley, through his attorney and as he had done for the arraignment on the initial indictment, waived appearance at the arraignment on the superseding indictment and entered a plea of not guilty. (R. 26.) As it did with the initial arraignment, on June 20, 2019, the Court accepted Mr. Conley's waiver and entry of plea on the superseding indictment. (R. 27.) Therefore, although the government argues that "Conley had an upcoming court date surrounding additional charges related to the Superseding Indictment; he knew of those charges and that his presence in court was required," (R. 105 at 8), Mr. Conley had actually satisfied his obligations with regard to his arraignment on the superseding indictment. The government's averment that "[d]ue to the sudden

4

onset of fear of legal consequences, Conley removed his bracelet and fled the state of Kentucky," misrepresents the factual record.

In its instant motion, the government contends that on the date of Mr. Conley's arraignment, June 20, 2019, "[t]he United States learned in court at defendant Conley's arraignment that he had told his counsel that his family had been in an accident and had to be air lifted to the hospital and he did not appear at his arraignment." (R. 105 at 1-2.) Mr. Conley opposes the consideration of this statement. First, this allegation is unsupported in the government's motion by any evidence, such as an affidavit from Mr. Conley's prior attorney acknowledging that this statement was made. Second, and without taking a position as to the veracity of the purported statement, Mr. Conley never waived his privilege protecting attorney-client communications. *See* Ky. R. Sup. Ct. SCR 3.130(1.6) (stating the privilege belongs to the client); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976) ("Confidential disclosures made by a client to an attorney made in order to obtain legal assistance are privileged.") To the extent Mr. Conley's prior attorney made any statement regarding Mr. Conley's circumstances, that attorney arguably breached Mr. Conley's attorney-client privilege. To the extent the Court permits such a statement to be introduced at trial—granting the government's motion to introduce flight evidence as evidence of guilt—Mr. Conley's substantive rights will be violated.

The only supported allegation contained in the government's motion is that Mr. Conley was apprehended in Ohio. (*See* R. 33.) Mr. Conley acknowledges that after the Court granted the government's motion to revoke his bond and issue an arrest warrant, he was arrested by law enforcement in Ohio.

The government's motion makes speculative allegations, without pointing to any supporting evidence, that Mr. Conley cut his ankle monitor and fled prior to his arraignment on the first superseding indictment due to fear of the new charges included in that indictment. Yet the record definitively shows that Mr. Conley satisfied his arraignment obligations on the superseding indictment, even prior to his arraignment date. While Mr. Conley acknowledges that he was arrested in another state within a matter of days after the Court granted the government's unsupported motion to revoke bond and issue an arrest warrant, there is insufficient evidence from which to draw a reasonable inference that Mr. Conley actually fled.

Because there is insufficient evidence from which to reasonably conclude that actual flight occurred in this case, the remaining requisite inferences also cannot be reasonably drawn. As will be discussed in greater detail below, to the extent the Court infers that evidence of flight occurred, there is no evidence that any such purported flight is linked to consciousness of guilt related to the charges in this case. For these reasons, the Court should deny the government's motion in limine to introduce flight evidence as evidence of guilt.

> 2. *Even if the Court concludes that there is sufficient evidence from which to reasonably infer that actual flight occurred, there is no evidence from which to infer Mr. Conley acted with a consciousness of guilt.*

Even if the Court infers from Mr. Conley's behavior that actual, as opposed to speculative, flight occurred, the government has put forth no evidence from which to reasonably infer that Mr. Conley acted with a consciousness of guilt, much less a consciousness of actual guilt of the charged crimes. Despite the government's allegations that Mr. Conley failed to appear for his arraignment on the first superseding indictment, Mr. Conley met his arraignment

6

obligations a day prior to his June 20, 2019, arraignment date by filing a waiver of appearance and entry of not guilty plea, which the Court accepted. (*See* R. 26; R. 27.) This action was in line with Mr. Conley's waiver of appearance and entry of a not-guilty plea on the initial indictment, which the Court accepted. (*See* R. 18; R. 16.) Consequently, nothing about Mr. Conley's waiver suggests flight from his pending charges.

Moreover, even if the Court believes that the government learned from Mr. Conley's attorney that Mr. Conley did not appear at the arraignment hearing because his family had suffered an accident and had been air lifted to a hospital (*see* R. 105 at 1-2), such allegation is no indication that any alleged flight was due to Mr. Conley's pending charges. Even if that statement was made, Mr. Conley had fulfilled his obligations with respect to the arraignment by conferring with his counsel, signing a waiver of appearance, and ensuring that waiver was filed in the record the day before the arraignment was scheduled to occur. For all of these reasons, even if the Court infers that Mr. Conley actually fled, there can be no inference from the government's allegations that Mr. Conley fled due to a consciousness of guilt, much less a consciousness of actual guilt of the charged crimes.

> 3. *The government has failed to sufficiently show actual flight occurred and, therefore, cannot admit evidence of flight as other act evidence under F.R.E. 404(b).*

The government's motion in limine to introduce flight evidence as evidence of guilt also asserts a F.R.E. 404(b) argument. Before the government can introduce 404(b) evidence over objection, trial courts must conduct a three-part analysis:

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

7

*United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012) (citations omitted). Put another way, the trial court must first determine if the other act actually occurred; if so, it must determine whether there is a proper 404(b)(2) purpose for which the government seeks to introduce the other act evidence; and, if so, it must conduct a F.R.E. 403 balancing test to determine whether the probative value of the other act is substantially outweighed by its risk of unfair prejudice.

The first prong of any 404(b) analysis is to determine whether the other act actually occurred. *See Clay*, 667 F.3d at 693. For all of the reasons stated above regarding the government's request to introduce flight evidence as evidence of guilt, specifically that the government has not provided sufficient evidence from which to reasonably infer that actual flight occurred, Mr. Conley also opposes the government's assertion that actual flight occurred sufficient to permit the introduction of flight evidence under F.R.E. 404(b). The government introduced no evidence to support a finding that Mr. Conley failed to appear at his arraignment because he had cut his ankle monitor and fled from the pending charges included in the first superseding indictment. Mr. Conley satisfied the obligations of arraignment by waiving his appearance and entering a plea of not guilty, which the Court accepted. Because there exists a lack of evidence to conclude that actual flight occurred, the government should be precluded from introducing flight evidence as 404(b) evidence.

   4.  *Even if the Court determines that flight occurred, that evidence is not being offered for a proper purpose under F.R.E. 404(b)(2).*

Federal Rule of Evidence 404(b) states, "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge,

8

identity, absence of mistake, or lack of accident." F.R.E. 404(b)(2). Additionally, the Rules mandate that the government give proper notice prior to trial that it intends to introduce 404(b) evidence:

> In a criminal case, the prosecutor must:
> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
> (C) do so in writing before trial--or any time during trial if the court, for good cause, excuses lack of pretrial notice.

F.R.E. 404(b)(3).

Here, the government has not given proper notice of its intent to use flight evidence as F.R.E. 404(b) evidence because the government has not yet articulated a legitimate or proper purpose for the introduction of flight evidence under F.R.E. 404(b). The government states in its motion that "[t]he flight evidence is not offered to show the character of the defendant but is used to show the guilt by conduct." (R. 105 at 6). This is not a proper purpose enumerated in F.R.E. 404(b)(2). While the list included in F.R.E. 404(b)(2) is non-exhaustive, there is no legitimate purpose for which the government seeks to introduce flight evidence under 404(b). Because the government has not articulated a proper purpose for the introduction of flight evidence as F.R.E. 404(b) evidence, and because the government has not articulated the reasoning that supports a proper purpose as required by F.R.E. 404(b)(3), the government should be prohibited from introducing any alleged flight evidence under F.R.E. 404(b).

> 5. *Any probative value the evidence of flight might have is substantially outweighed by the unfair prejudice it would cause Mr. Conley.*

As already mentioned, Mr. Conley never waived the attorney-client privilege protecting his communications with defense counsel. The government contends that it "learned in court at defendant Conley's arraignment that he had told his counsel that his family had been in an

9

accident and had to be air lifted to the hospital," and that this was the reason Mr. Conley did not appear at his arraignment. (R. 105 at 2.) This allegation fails to acknowledge that Mr. Conley—a day prior to his arraignment and through his attorney—waived his appearance at the arraignment and entered a plea of not guilty. The allegation, if true, arguably breached the attorney-client privilege. If admitted at trial, Mr. Conley's substantive rights will be violated. While there *may* be sufficient reasons to conclude Mr. Conley violated the conditions of his pretrial release (*see* R. 40), there is no evidence to conclude Mr. Conley fled due to the pending charges.

> 6. *At most, should the Court grant the government's motion, the flight evidence should only be admitted as to kidnapping, bank fraud, and aggravated identity theft charges.*

The government states in its motion that Mr. Conley's alleged flight occurred in response to the superseding indictment that was filed in June 2019. (R. 105 at 1.) Mr. Conley had already been arrested for and arraigned on the interstate threatening messages, which were subject to the initial indictment. (*See* R. 16; R. 18.) While Mr. Conley waived appearance at the arraignment on the superseding indictment on June 20, 2019, he did so on June 19, 2019, ahead of his scheduled arraignment. On June 21, 2019, the government moved for an arrest warrant related to the removal of Mr. Conley's electronic monitoring device (R. 29), and the Court granted the motion and issued the arrest warrant on the same date. (R. 30.) Mr. Conley was arrested on that warrant two days later in Ohio. (*See* R. 33.)

The government contends that due to a sudden-increase-in-fear related to the first superseding indictment, which added charges of kidnapping, bank fraud, and aggravated identity theft, Mr. Conley cut his ankle monitor and fled from the pending charges. (*See* R. 105 at 8.)

Another three months passed before a second superseding indictment was brought adding the charge of interstate transportation for prostitution. (*See* R. 45.)

The fourth predicate inference the Court must draw is a connection between Mr. Conley's consciousness of guilt of the crime charged and his actual guilt on the crimes charged. *See Dillon*, 870 F.2d at 1127. According to the government's motion, the fear associated with the new kidnapping, bank fraud, and aggravated identity theft charges caused Mr. Conley to flee. (R. 105 at 8.) Thus, even if the Court grants the government's motion, the alleged flight evidence should only be permitted as to the kidnapping, bank fraud, and aggravated identity theft charges, now included in the second superseding indictment as Count 2, Count 3, and Count 4. Any alleged flight evidence should not be admitted as to the interstate transportation for prostitution and interstate threatening messages charges contained in the second superseding indictment as Count 1 and Counts 5-14, respectively.

## **CONCLUSION**

For all of the above reasons, Mr. Conley respectfully requests that the Court deny the government's motion in limine to introduce flight evidence as evidence of guilt. Alternatively, if the Court determines that alleged flight evidence should be admitted as evidence of guilt, this evidence should only be admitted as to the kidnapping, bank fraud, aggravated identity theft charges.

Respectfully submitted,

*/s/ Joshua F. Barnette*
Joshua F. Barnette
STITES & HARBISON PLLC
400 West Main Street, Suite 1800
Louisville, KY  40202
859.226.2318
jbarnette@stites.com
*Counsel for Bryan Douglas Conley*

## CERTIFICATE OF SERVICE

I hereby certify that on 2nd day of January, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Joshua F. Barnette*
Joshua F. Barnette

12