UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff<br><br>v.<br><br>BRYAN DOUGLAS CONLEY,<br><br>         Defendant. | Case No. 3:19-CR-00019-DJH-RSE<br><br>*Electronically Filed* |

___

## MOTION TO DISMISS
___

Comes now Defendant Bryan Douglas Conley, by and through counsel, and, pursuant to the Sixth Amendment, 18 U.S.C. § 3162(a)(2), and Federal Rule of Criminal Procedure 12(b)(3)(A)(iii), hereby moves the Court to dismiss with prejudice all charges against him due to a violation of his constitutional and statutory rights to a speedy trial.

## BACKGROUND & CHARGES

On January 31, 2019, Mr. Conley was arrested in the Western District of Kentucky. On the same date, a criminal complaint was filed and Mr. Conley made his initial appearance. (R. 1.) Less than a month later, on February 20, 2019, an indictment was filed charging Mr. Conley with 10 counts of sending threatening interstate communications. (R. 11.) Mr. Conley was arraigned on the initial indictment on February 21, 2019. (R. 16; R. 18.)

On June 4, 2019, a superseding indictment was filed against Mr. Conley. (R. 22.) In addition to the threatening interstate communications charges from the initial indictment, the superseding indictment charged Mr. Conley with kidnapping, bank fraud, and aggravated

identity theft.  (R. 22.)  Mr. Conley was arraigned on the superseding indictment on June 20, 2019.  (R. 26; R. 27; R. 28.)

On September 18, 2019, a second superseding indictment was filed against Mr. Conley.  (R. 45.)  In addition to the threatening interstate communications, kidnapping, bank fraud, and aggravated identity theft charges from the first superseding indictment, the second superseding indictment charged Mr. Conley with interstate transportation for prostitution.  (R. 45.)  Mr. Conley was arraigned on the second superseding indictment on October 10, 2019.  (R. 51.)

Because the filing of a new, or superseding, indictment does not restart the speedy trial clock with regard to the charges contained in the prior indictment, *see Sylvester v. United States*, 868 F. 3d 503, 507-09 (6th Cir. 2017), three speedy trial clock calculations must be analyzed in this case.  These analyses are presented below.  The first analysis addresses the speedy trial clock with regard to the ten counts of threatening interstate communications contained in the initial indictment.  Those charges did not change in the first or second superseding indictment, but were included alongside additional charges.  The second speedy trial clock analysis addresses the kidnapping, bank fraud, and aggravated identity theft charges brought in the superseding indictment.  The third speedy trial clock analysis addresses the interstate transportation for prostitution charge brought in the second superseding indictment.  Because the 70-day clock has expired with regard to all three indictments, all charges against Mr. Conley must be dismissed.

## LEGAL STANDARDS

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ."  U.S. Const. amend VI.  The only remedy for a constitutional speedy trial violation is dismissal with prejudice.  *United States v. Young*, 657 F.3d 408, 413 (6th Cir. 2011).

2

The Speedy Trial Act, in part, codifies that speedy trial right but also protects the public's interest in bringing criminal defendants to trial in a timely manner. *See* 18 U.S.C. § 3161 *et seq*. Generally speaking, the Speedy Trial Act requires a criminal trial to start within 70 days of the filing of an indictment or the defendant's appearance on the indictment. 18 U.S.C. § 3161(c)(1). The Act also provides for numerous delays that are not to be counted when making speedy trial calculations. 18 U.S.C. § 3161(h). The filing of a superseding indictment does not restart the speedy trial clock with regard to the charges contained in the previous indictment. *Sylvester*, 868 F.3d at 507-09 (holding same and collecting sister circuits' cases holding same). Furthermore, a complex designation or other open-ended ends-of-justice exclusions under 18 U.S.C. §3161(h)(7)(A) and (B) do not remove for all-time a case from the mandates of the Speedy Trial Act. *See Zedner,* 547 U.S. 489, 500-01 (2006); *United States v. Huebner*, No. 3:12-CR-443, 2013 WL 6199599 *1-*2 (N.D. Ohio Nov. 27, 2013) (analyzing open-ended speedy trial exclusions due to "complex" case designation after the United States Supreme Court's decision in *Zedner*).[1]

"If a trial does not begin on time, the defendant may move, before the start of trial or the entry of a guilty plea, to dismiss the charges, and if a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice." *Zedner*, 547 U.S. at 499. The factors to be considered when deciding whether to dismiss with prejudice or without prejudice are: "the seriousness of the offense; the

---

[1] In *United States v. Sabino*, 274 F.3d 1053 (6th Cir. 2001), a pre-*Zedner* case, the Sixth Circuit held that "open-ended ends-of-justice continuances for *reasonable time periods* are permissible in cases where it is not permissible to preferably set specific end dates." *Sabino*, 274 F.3d at 1065. The holding in *Sabino* no longer applies after the United States Supreme Court decision in *Zedner*. *See United States v. Huebner*, No. 3:12-CR-443, 2013 WL 6199599 *1-*2 (N.D. Ohio Nov. 27, 2013) (analyzing open-ended speedy trial exclusions due to "complex" case designation after the United States Supreme Court decision in *Zedner*). Moreover, *Sabino* is distinguishable from this case because here, the Court's Order following the designation of this case as complex included an end date for the continuance. (R. 52.)

3

facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the Act and on the administration of justice." *Id.* (quoting 18 U.S.C. § 3162(a)(2)).

Here, Mr. Conley's motion to dismiss is timely as trial has not yet begun. Furthermore, as shown below, his arguments are meritorious. Consequently, the Court must dismiss all charges against him. Moreover, for the reasons articulated below, Mr. Conley respectfully asks the Court to dismiss the charges with prejudice.

## ANALYSIS

Even when factoring in all statutory exclusions, the 70-day speedy trial clock has expired on all three groups of charges.

### 1. *299 days have passed with regard to the threatening interstate communications charges contained in the initial indictment.*

With regard to the threatening interstate communications charges originally brought in the initial indictment, and repeated in the first and second indictment, the speedy trial clock started on February 21, 2019, the date on which Mr. Conley was arraigned on the initial indictment. (R. 16; R. 18.) The clock stopped **54 days** later on April 16, 2019, when a motion to continue was filed. (R. 20.) When ruling on that motion, the Court tolled the clock between April 16, 2019, and June 26, 2019. (R. 21.) Prior to June 26, 2019, a superseding indictment was filed, and the government filed a motion for revocation of bond and issuance of arrest warrant. (R. 22; R. 29.) The warrant issued on June 21, 2019, and Mr. Conley was arrested two days later in Northern District of Ohio on June 23, 2019. (R. 30; R. 31; R. 33.) Because of the government's motion and Mr. Conley's unavailability, the Court rescheduled the June 26, 2019, status conference to July 16, 2019. (R. 36.) Mr. Conley made his initial appearance on the government's motion for revocation of bond on July 9, 2019. (R. 40.) In a Text Order, the Court,

4

on its own accord, remanded the July 16, 2019, status conference. (R. 38.) Consequently, the time between April 16, 2019, and July 16, 2019, is excluded from the speedy trial calculation on these charges.

The speedy trial clock began running again on July 16, 2019. **One day** later, on July 17, 2019, the government filed an unopposed motion for a protective order, effectively stopping the speedy trial clock. (R. 41.) The Court granted that motion on July 22, 2019, and the speedy trial clock began again. (R. 42.) On July 24, 2019, the Court set a status conference for August 13, 2019. On August 12, 2019, **21 days** after the speedy trial clock restarted on July 22, 2019, the Court entered an Order rescheduling the August 13 status conference to September 17, 2019. (R. 44.) In doing so, it excluded the time between August 12, 2019, and September 17, 2019. (R. 44.) By this time, the speedy trial clock had run for 76 days with regard to the initial indictment.

No status conference was held on September 17, 2019, because defense counsel did not appear at the scheduled time. (R. 48.) The Court remanded the September 2019 status conference and rescheduled the status conference for October 29, 2019. (R. 48.) The Court also instructed the parties to file an agreed order addressing the speedy trial clock calculations with regard to this continuance. (R. 48.) No agreed order was filed, and, consequently, the speedy trial clock resumed on September 17, 2019.[2]

On October 29, 2019, **42 days** after the speedy trial clock resumed on September 17, 2019, the Court held a status conference, at which it granted a defense motion to declare the case complex. (R. 52.) The Court scheduled another status conference for February 5, 2020, and, due to the complex designation, excluded the time between October 29, 2019, and February 5, 2020.

---

[2] The second superseding indictment was filed on September 18, 2019, and Mr. Conley was arraigned on that indictment on October 10, 2019. (R. 45; R. 51.) The filing of the second superseding indictment, and Mr. Conley's arraignment thereon, has no impact on the speedy trial clock calculation with regard to the charges asserted in the initial indictment.

5

(R. 52.) At the February 5, 2020, status conference, the Court scheduled another status conference for April 8, 2020. (R. 53.) At the April 2020 status conference, without articulating any reason for doing so, the Court stated the time between February 5, 2020, and April 8, 2020, would be excluded from the speedy trial clock by operation of the "complex" designation previously entered.[3] (R. 53.)

On March 10, 2020, the defense filed an unopposed motion for a psychiatric evaluation. (R. 54.) Notably, in March 2020, Mr. Conley began raising his speedy trial clock concerns. He explicitly set forth his concerns in a letter written directly to the Court on March 20, 2020. (R. 55.) On March 27, 2020, the Court granted the unopposed motion for a psychiatric evaluation. (R. 58.) The Defendant was later designated to the Federal Detention Center in Miami, Florida for his evaluation, but did not arrive to that facility until August 27, 2020. (R. 72.) Under the Speedy Trial Act, only 10 days may be excluded from the speedy trial clock for transportation to and/or from a facility for an evaluation; this ten day excludable period is calculated from the date of the Order. 18 U.S.C. § 3161(h)(1)(F); *United States v. Turner*, 602 F.3d 778, 782-86 (6th Cir. 2010). Consequently, the time from March 10, 2020, through April 6, 2020 (ten days after the Order on the motion) is excluded under the Speedy Trial Act, but the time from April 6, 2020, through August 27, 2020 (the date Mr. Conley arrived at the Federal Detention Center) is not excluded. However, because the Court previously determined that the time up to April 8, 2020, is not to be calculated for speedy trial purposes, another two days are excluded. Thus, **141 days**

---

[3] Arguing that an additional 34 days should be included in all of the speedy trial clock analyses presented in this motion, Mr. Conley addresses below the time excluded as a result of the Court's February 5, 2019, Order. *See infra*, pages 11-12.

ticked off Mr. Conley's speedy trial clock during the time period he awaited transportation to the facility for his psychiatric evaluation.[4]

The report on Mr. Conley's evaluation was completed on December 8, 2020, though it was not filed in the record until December 16, 2020. (R. 72.) However, no action was taken on this report until December 28, 2020, when the Court entered an Order setting a status conference for January 15, 2021. (R. 73.) A status conference was held on January 15, 2021, at which time the Court set another status conference for February 23, 2021, and excluded all time between those two dates. (R. 76.) Because only ten days can be excluded under the Act for transportation to and/or from a facility for psychological or psychiatric evaluations, and calculating the speedy trial clock in the most conservative manner during this period, the time between December 16 and December 26, 2020 may be excluded, but the time between December 26, 2020, and January 15, 2021, is not excluded. Consequently, another **20 days** expired from Mr. Conley's speedy trial clock on these charges during this time period.

From January 15, 2021, through May 24, 2021, the Court scheduled several status conferences and, in doing so, excluded the time between status conferences from any speedy trial calculations. (R. 76; R. 77; R. 78.) At the May 24, 2021, status conference, the parties were instructed to file a status report outlining any applicable briefing deadlines and next steps by June 7, 2021. (R. 79.) The Court excluded the time between May 24, 2021, and June 7, 2021. (R. 79.) The parties did not file any such status report, and the speedy trial clock began to run again on June 7, 2021.

---

[4] Mr. Conley acknowledges that this transportation delay occurred during the COVID-19 pandemic. Should the Court determine that the 141-day delay be reasonably adjusted to account for the transportation of inmates with the Bureau of Prisons during COVID-19, the adjustment should only affect this calculation by 14 days as that was the amount of time inmates were quarantined upon transferring from one facility to another per Bureau of Prisons policies and procedures. (*See* R. 72, PageID #260, reporting on the 14-day quarantine period under the BOP's COVID-19 Modified Operations Plan.)

7

On June 21, 2021, **14 days** after the speedy trial clock began to run again, the parties filed a Joint Motion for Competency Determination and Joint Status Report. (R. 80.) The parties asked the Court to accepted the Bureau of Prisons' competency report from December 2020 finding Mr. Conley competent to stand trial. (R. 80.) The parties asked the Court to set another status conference for 30-45 days from this June 21st filing. (R. 80.) The Court held a competency hearing on July 28, 2021, and found that the United States had satisfied its burden of proof as to Mr. Conley's ability to stand trial; the Court ordered the case to proceed accordingly. (R. 87.) Thus, the time between June 21, 2021, and July 28, 2021, is excluded from speedy trial calculations.

On July 28, 2021, the same date as Mr. Conley's competency hearing, the government filed a motion to schedule a status conference in order to schedule future proceedings. (R. 85.) Hinting at its own speedy trial concerns, the government noted that this motion was being filed "out of an abundance of caution" in case an order was not readily entered on the uncontested competency issue. (R. 85.) The government did not articulate the "abundance of caution" causing it to file the motion. (*See id.*) On August 17, 2021, the Court entered a Text Order scheduling a status conference for August 23, 2021. (R. 88.) Consequently, the time between July 28, 2021, and August 17, 2021, is excluded, but another **6 days** of speedy trial time lapsed before the status conference was held on August 23, 2021.

Since the August 23, 2021, status conference, all time has been excluded from speedy trial calculations as several Orders and motions were filed tolling the speeding trial clock. (*See* R. 89; R. 93; R. 99; R. 101; R. 105; R. 117; R. 122; R. 140-143; R. 145.) Included in those motions were two defense attorneys' motions to withdraw. (R. 95; R. 108.) The Court granted both of those motions (R. 98; R. 115) and, in considering those motions, properly and reasonably

8

excluded time for continuity of counsel purposes. Thus, the speedy trial clock has not restarted since the August 23, 2021, status conference.

In all, a total of **299 speedy-trial-clock days** have expired with regard to the ten threatening interstate communications charges originally brought in the initial indictment.

### 2. *246 days have passed with regard to the kidnapping, bank fraud, and aggravated identity theft charges contained in the superseding indictment.*

With regard to the kidnapping, bank fraud, and aggravated identity theft charges brought in the superseding indictment, and repeated in the second superseding indictment, the speedy trial clock started on June 20, 2019, the date on which Mr. Conley was arraigned on the superseding indictment. (R. 22; R. 28.) The superseding indictment included the threatening interstate communications charges from the initial indictment, but the filing of the superseding indictment does not affect the speedy trial calculation on those previous charges. *See Sylvester*, 868 F.3d at 507-09.

On June 21, 2019, **one day** after arraignment on the superseding indictment, the government filed its motion for bond revocation and issuance of an arrest warrant. (R. 29.) The warrant issued on June 21, 2019, and Mr. Conley was arrested two days later in Northern District of Ohio on June 23, 2019. (R. 30; R. 31; R. 33.) Because of the government's motion and Mr. Conley's unavailability, the Court rescheduled a previously set June 26, 2019, status conference to July 16, 2019. (R. 36.) Mr. Conley made his initial appearance on the government's motion for revocation of bond on July 9, 2019. (R. 40.) On the same date, in a Text Order, the Court, on its own accord, remanded the July 16, 2019, status conference. (R. 38.) Consequently, the time between June 21, 2019, and July 16, 2019, is excluded from the speedy trial calculation on these kidnapping, bank fraud, and aggravated identity theft charges.

9

The speedy trial clock began running again on July 16, 2019. Since that date, the speedy trial analysis provided above (with regard to the initial indictment) runs true for the charges brought anew as a result of the superseding indictment. *See supra,* pages 4-9. Consequently, **246 days** have run on the speedy trial clock with regard to the kidnapping, bank fraud, and aggravated identity theft charges asserted in the superseding indictment.

> 3. ***199 days have passed with regard to the interstate transportation for prostitution charge contained in the second superseding indictment.***

With regard to the interstate transportation for prostitution charge brought anew as a result of the second superseding indictment, the speedy trial clock started on October 10, 2019, the date on which Mr. Conley was arraigned on the second superseding indictment. (R. 45; R. 51.) The second superseding indictment included the threatening interstate communications charges from the initial indictment, as well as the kidnapping, bank fraud, and aggravated identity theft charges from the superseding indictment, but the filing of the second superseding indictment does not affect the speedy trial calculation on those previous charges. *See Sylvester*, 868 F.3d at 507-09.

The speedy trial clock on the second superseding indictment ran for **18 days**, from October 10, 2019, until October 29, 2019, before it stopped as a result of a status conference previously scheduled by the Court. (*See* R. 52.) The Order setting the October 29, 2019, status conference did not exclude the time up to the status conference. (*See* R. 48.) From October 29, 2019, the speedy trial clock analysis for the second superseding indictment parallels the analysis provided above (with regard to the initial indictment). *See supra*, pages 4-9. Consequently, **199 days** have expired from the speedy trial clock with regard to the interstate transportation for prostitution charge asserted in the second superseding indictment.

### *4. An additional 34 days should be added to the speedy trial analyses above.*

On a motion from the defense, the Court designated this case complex on October 29, 2019. (R. 52.) In doing so, the Court stated that the voluminous amount of discovery involved in this case required the case to be removed from the time limits of the Speedy Trial Act. (R. 52.) The Court then continued the case for more than three months, and set another status conference for February 5, 2020. (R. 52.) Due to the complex designation, the Court excluded the time between October 29, 2019, and February 5, 2020 from speedy trial calculations. (R. 52.)

Then, at the February 5, 2020, status conference, the Court scheduled another status conference for April 8, 2020. (R. 53.) The Court stated, "This matter was previously declared complex and is, therefore, removed from the time constraints of the Speedy Trial Act." (R. 53.) However, the declaration of a case as complex, pursuant to 18 U.S.C. § 3161(h)(1)(7)(B)(ii), does not automatically remove a criminal case from the time constraints of the Speedy Trial Act, as suggested by the Court's February 5, 2020, Order. Even though the complex designation of this case came as a result of a defense motion, a criminal defendant cannot prospectively waive the time constraints established by the Speedy Trial Act. *Zedner*, 547 U.S. at 500. "If a defendant could simply waive the application of the Act whenever he or she wanted more time, no defendant would ever need to put such considerations before the court under the rubric of an ends-of-justice exclusion." *Id*. Consequently, Mr. Conley's request to designate the case complex in October 2019 did not -- indeed, could not -- act to prospectively remove the case from the time constraints set forth in the Speedy Trial Act.

In a case with similar speedy trial clock issues -- where a case was designated complex and the defendant moved for deadline extensions -- a sister trial court from this Circuit addressed

11

the issue of open-ended ends-of-justice continuances. *See generally United States v. Huebner*, No. 3:12-CR-443, 2013 WL 6199599 (N.D. Ohio Nov. 27, 2013). There, the Northern District of Ohio determined that, "Were a court to treat such an initial ends-of-justice finding as tolling, for all time, the Speedy Trial Act clock without ever having to again revisit the ends-of-justice determination, the Act would be nearly eviscerated. In short, *Sabino* does not require a district court to enter definitive end dates for ends-of-justice continuances, but does require that such continuances be reasonable in length." *Huebner*, 2013 WL 6199599, at *2 (analyzing the applicability of Speedy Trial Act holdings from *United States v. Sabino*, 274 F.3d 1053 (6th Cir. 2001) after the United States Supreme Court's decision in *Zedner*). The Court in *Huebner* also correctly found that "the Speedy Trial Act does not include a separate set of rules for complex cases." *Id.* Here, with the initial complex designation, came a reasonable end date (February 5, 2020) for that requested continuance (*see* R. 52), and Mr. Conley did not, and could not, waive any future speedy trial time constraints. Just as the Northern District of Ohio did in *Huebner*, this Court should find that, "the original designation of a case as complex [does not], without more, carr[y] through until the case is resolved and [does not] allow[] unlimited extensions of time without any further findings under the Act." *Huebner*, 2013 WL 6199599, at *2.

Nevertheless, on March 10, 2020, Mr. Conley filed an unopposed motion for psychiatric evaluation. (R. 54.) This filing is the first action after February 5, 2020, that would stop the speedy trial clock. Consequently, the 34 days between February 5, 2020, and March 10, 2020, should not be excluded from the speedy trial clock. These **34 days** should, instead, be added to the calculations set forth above. Doing so would result in **333 days** lapsing on the initial indictment, **280 days** lapsing on the superseding indictment, and **233 days** lapsing on the second superseding indictment.

12

### 5. *Mr. Conley's Sixth Amendment right to a speedy trial has been violated.*

In addition to the Speedy Trail Action violations set forth above, Mr. Conley's Sixth Amendment right to a speedy trial has also been violated. In determining whether a criminal defendant has been denied his constitutional right to a speedy trial, trial courts must consider four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Young*, 657 F.3d at 414. "No one factor constitutes a 'necessary or sufficient condition to the finding of a deprivation of a right of speedy trial[;]' '[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant.'" *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006) (quoting *Barker*, 407 U.S. at 533). The only remedy for a constitutional speedy trial violation is dismissal with prejudice. *Young*, 657 F.3d at 413.

### A. Length of Delay

Under a Sixth Amendment speedy trial analysis, the length of delay is measured from the earlier of the date of arrest or the date of indictment through the start date of the defendant's trial. *Maples v. Stegall*, 427 U.S. 1020, 1026 (6th Cir. 2005). "The length-of-delay factor serves as a threshold inquiry: if the length of delay is not uncommonly long, then the judicial examination ends, but a delay of one year is presumptively prejudicial and triggers application of the remaining three [*Barker*] factors." *Bass*, 460 F.3d at 836. Here, Mr. Conley was arrested on January 31, 2019, and he is scheduled to go to trial on February 6, 2023. (R. 3; R. 122.) Thus, more than four years will have lapsed by the time his trial begins. Such delay is not only presumptively prejudicial, triggering the remaining *Barker* factors, but also weighs heavily in a finding of a constitutional speedy trial violation given the overall length of the delay.

13

B. The Reason for the Delay

As an initial matter, it is worth noting that, although continuously represented by counsel since February 2019, Mr. Conley repeatedly raised his concern over his speedy trial rights in *pro se* letters to the Court. (R. 55; R. 69; R. 70; R. 86; R. 92; and R. 125.) Early on in this case, although the government had all of the evidence available to it at the time of Mr. Conley's January 2019 arrest, the government caused several months of delay by twice superseding the indictment. (R. 11; R. 22; R. 45.) While the government is free to supersede indictments as it sees fit, government-caused delays "motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government." *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). Here, at the time of Mr. Conley's arrest, the government had all the evidence related to the charges brought in the superseding indictment; indeed, it laid out most of the evidence in its criminal complaint. (*See* R. 1.) And the charge added as a result of the second superseding indictment actually occurred prior to the charges brought in the initial and superseding indictments. (*Compare* R. 22 *with* R. 45.) Thus, the only explanation for the several months delay between filing the initial indictment and the second superseding indictment is that the government was engaging in bad faith, harassment, or seeking to gain some tactical advantage.

Additionally, a large portion of the delay in this case came as a result of an unopposed motion for a psychiatric evaluation filed by Mr. Conley. (*See* R. 54; *see also infra*, pages 6-7.) However, while the Court granted that motion in a timely fashion, the government (even if not the United States Attorney's Office) caused an unreasonable delay in designating and transporting Mr. Conley to the facility at which the evaluation was completed. The Court granted the motion for a psychiatric evaluation on March 27, 2020, but Mr. Conley did not arrive

at the evaluation facility until five months later, on August 27, 2020. (R. 58; R. 72.) Overall, more than eight months passed from the time the motion for a psychiatric evaluation was filed in March 2020 until the filing of the psychiatric report in December 2020; yet the evaluation period only lasted a couple of months. (*See* R. 72.) Other periods of delays were the result of defense attorneys' motions to withdraw and the subsequent appointment of new defense counsel. At worst, this factor should be neutral as the delay was caused by both Mr. Conley and the government.

### C. Defendant's Assertion of his Right

"A defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Bass*, 604 F.3d at 837 (internal citations omitted). As already stated, Mr. Conley, although represented by counsel throughout the pendency of this case, repeatedly attempted to bring his speedy trial concerns to the attention of the Court. (R. 55; R. 69; R. 70; R. 86; R. 92; and R. 125.) While those attempts may not have been articulated in the most pleasant of manners nor raised by his then-appointed counsel, the assertion of his speedy trial right was no less made multiple times. Because Mr. Conley routinely and repeatedly raised his speedy trial concerns throughout the pendency of this case, this factor weighs in favor of finding a constitutional speedy trial violation.

### D. Prejudice to Defendant

"The Supreme Court has identified three defense interests that a court should consider in a speedy trial case when determining whether a defendant suffered actual prejudice: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense was impaired." *Bass*, 460 F.3d at 837 (citing *Barker*, 407 U.S. at 532). The overall prejudice caused by the delay is the fact that Mr. Conley has been incarcerated since mid-

2019, without being brought to trial. Additionally, the anxiety and concern of the accused is not only evidenced in Mr. Conley's *pro se* writings to the Court, but arguably highlighted in the psychiatric evaluation filed in December 2020. (*See* R. 72.) This *Barker* factor weighs in favor of finding that Mr. Conley's constitutional right to a speedy trial has been violated.

### 6. *The charges should be dismissed with prejudice.*

As an initial matter, the only remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal with prejudice. *Young*, 657 F.3d at 413.

Alternatively, a violation of the Speedy Trial Act can result in dismissal with or without prejudice. 18 U.S.C. 3162(a)(2). The factors to be considered when deciding whether to dismiss with prejudice or without prejudice for a violation of the Speedy Trial Act are: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the Act and on the administration of justice." *Zedner*, 547 U.S. at 499 (quoting 18 U.S.C. § 3162(a)(2)). Here, admittedly, the charges are serious, which weigh in favor of dismissal without prejudice, s*ee United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000); however, the facts and circumstances that led to the delays are overwhelmingly in favor of dismissal with prejudice.

Before the case was declared complex, and before Mr. Conley filed an unopposed motion for a psychiatric evaluation, the speedy trial clock had run on the charges brought in the initial indictment. Moreover, the five month delay that resulted between the Court granting Mr. Conley's motion for a psychiatric evaluation and his designation and arrival at the facility where the evaluation was to be conducted was patently unreasonable. While the case was declared complex, and Mr. Conley's first four attorneys filed motions to withdraw, reasonable time was excluded under the Act for complexity and continuity of counsel; regardless, more than 300 days

expired from the speedy trial clock with regard to the charges brought in the initial indictment, more than 200 days expired from the speedy trial clock with regard to the additional charges brought in the superseding indictment, and nearly 200 days expired from the speedy trial clock with regard to the additional charge brought in the second superseding indictment. The egregious delays weigh strongly in favor of dismissal with prejudice.

Finally, the Court must consider the impact of a reprosecution on the administration of the Act and on the administration of justice. This factor weighs in favor of dismissal with prejudice because this is not a case where the speedy trial clock expired within a few days of the 70-day limit. Here, the speedy trial clock ran for nearly three times the statutory limit on the second superseding indictment, more than three times the limit on the superseding indictment, and more than four times the limit on the initial indictment.

Consequently, because Mr. Conley's Sixth Amendment right to a speedy trial was violated, and because the Speedy Trial Act's time constraints have been egregiously violated and the factors for dismissal weigh in favor of dismissal with prejudice, the Court should dismiss with prejudice all charges pending against Mr. Conley.

## CONCLUSION

For all of the reasons above, Mr. Conley respectfully requests that the Court find that his constitutional and statutory rights to a speedy trial have been violated and dismiss with prejudice all of the charges against him.

Respectfully submitted,

*/s/ Joshua F. Barnette*
Joshua F. Barnette
STITES & HARBISON PLLC
400 West Main Street, Suite 1800
Louisville, KY 40202
859.226.2318
jbarnette@stites.com
*Counsel for Bryan Douglas Conley*

# CERTIFICATE OF SERVICE

I hereby certify that on 17th day of January, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Joshua F. Barnette*
Joshua F. Barnette