# Barnette, Joshua

| | |
|---|---|
| **From:** | Barnette, Joshua |
| **Sent:** | Tuesday, July 12, 2022 11:33 AM |
| **To:** | Judd, Joshua (USAKYW); joel.king@usdoj.gov |
| **Subject:** | Conley - R. 16 Discovery Request |
| **Attachments:** | Conley - R16 Discovery Request Letter.PDF |

Josh and Joel, good morning,

As you can imagine, being the fifth attorney on this case, I've been able to gather some discovery from prior attorney(s), but not everything. Josh, I was able to get by your office last week and view the discovery that contained two discs of cell phone extractions (one cell phone being Conley's phone, the other cell phone being R▮▮▮▮▮ phone). That said, there seems to be discovery I still do not have. Therefore, attached, please find my standard discovery request letter. I know Aaron, your paralegal, stated he put in a "work order" to get the discovery prepared for production, but just wanted to follow-up with a formal request.

Also, as best I can tell *at this point*, I do not have: (1) the interviews (audio/video/transcripts) with Mr. Conley; (2) interviews (audio/video/transcripts) with R▮▮▮▮▮ co-workers; (3) any of the Plenty of Fish messages that were sent through the app/website's platform, which some of the discovery material confirm exists. Additionally, I only have three 302s: one 302 that contains Bates Stamp USA-001493 – 1495 (though I do not have the photos referenced in that 302); one 302 that contains Bates Stamp 1767; and one 302 that contains Bates Stamp 2930. There may be more, but this is what I've been able to identify based on what I currently have.

Finally, I only have approximately 200-300 pages of discovery. Because that last 302 contains Bates Stamp number 2930, I venture to say I am missing the large majority of discovery.

Please let me know what we can do to expedite the production of the discovery so that I can adequately review the material as well as get with Mr. Conley to have him review the discovery. As always, please let me know if you have any questions.

Thanks in advance!

Best,
josh

**Joshua F. Barnette**
*Attorney*
*Direct: 859-226-2318*
*Fax: 859-253-9144*
[jbarnette@stites.com](mailto:jbarnette@stites.com)

**STITES & HARBISON** PLLC
250 West Main Street, Suite 2300, Lexington, KY 40507-1758
About Stites & Harbison | Bio | V-Card | LinkedIn
*Please consider the environment before printing this email.*

**NOTICE:** This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or forward this message or any attachment. Please notify the sender immediately and delete all copies of the message and any attachments. Neither the transmission of this message or any attachment, nor any error in transmission, constitutes a waiver of any applicable legal privilege.



250 West Main Street
Suite 2300
Lexington, KY  40507-1758
(859) 226-2300
(859) 253-9144 FAX

Joshua F. Barnette
(859) 226-2318
jbarnette@stites.com

July 12, 2022

Mr. Joshua D. Judd
Mr. Joel King
Assistant United States Attorneys
U.S. Attorney's Office - Louisville
717 W. Broadway
Louisville, Kentucky 40202

RE:     *United States v. Bryan D. Conley*, 3:19-CR-00019-BJB-RSE

Dear Mr. Judd and Mr. King,

      Please accept this letter as Mr. Conley's demand for discovery pursuant to Fed. R. Crim. P. 16.  This demand is to be read to include:

      1.     **Statements of the Defendant:**  Pursuant to Federal Rule of Criminal Procedure 16, Defendant hereby requests that the Government disclose any statements, whether written or oral, recorded or otherwise, made by Defendant.  This request specifically encompasses any such statement that is known by the prosecutor or law enforcement officer involved in any capacity in the arrest and/or prosecution of Mr. Conley for this matter.

      2.     **Defendant's Criminal History:**  Specifically, Ms. Gillis herein requests that the Government provide an NCIC report, any applicable state's criminal history report, and a Federal Bureau of Investigation Identification Sheet.

      3.     **Documents, Radio Communications, Arrest Reports, Notes, and Tapes:**  Defendant specifically requests any documents, radio communications, arrest reports, notes, and tapes, including any arrest reports, other law enforcement reports, law enforcement notes, witness statements, other documents, 911 calls, and/or radio communications that relate to this case.  This request encompasses any reports, notes, and/or tapes that are within the possession, custody, or control of the Government or whose existence is known or by the exercise of due diligence should be known to the Government, including any information that is within the knowledge of law enforcement officers involved in the investigation, arrest, and prosecution of this matter.

      4.     **Reports of Scientific Tests and/or Examinations:**  Defendant requests any reports of scientific tests and/or examination, which are to include the results or reports of physical or mental examinations, and of any scientific tests or experiments, or copies thereof, conducted in relation to this case or upon evidence in the present case that is in the possession, custody, or control of the Government (whether the United States Attorney or any law



enforcement officer involved in the investigation, arrest, and prosecution of this matter) that is known, or by the exercise of due diligence should be known, to the attorney for the Government, which are material to the preparation of the defense or which are intended for use by the Government in its case-in-chief.

5.      ***Brady* Material:**  Defendant specifically request all *Brady* material, which includes a demand, pursuant to *Kyles v. Whitley* 514 U.S. 419 (1995) and *Strickler v. Greene*, 524 U.S. 978 (1999), that the Government not only disclose, but actively seek out, evidence that is favorable to either guilt or punishment to the defense.  The requested evidence includes all information material to guilt, punishment[1], and the credibility of Government witnesses[2], including potential impeachment material for all Government witnesses.[3]  We request disclosure of all evidence in the Government's possession that might reasonably be considered favorable to the defense, regardless of your determination of its materiality.  This request includes impeachment material that may also fall under the *Jencks* Act.[4]

The requested evidence includes all information that you or any part of the prosecution team know or reasonably should know tends to negate the guilt of the accused or to mitigate the offense.  Under *Brady* and its progeny, this request extends to all information known by all law enforcement or other Government agencies involved in this case, whether or not personally known to the individual prosecutor(s).[5]

---

[1] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).
[2] *See Giglio v. United States*, 405 U.S. 150, 154 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this rule." (citations and internal quotation marks omitted).
[3] *See United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence . . . as well as exculpatory evidence falls within the *Brady* rule."); *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1199-1200 (C.D. Cal. 1999) (Impeachment evidence is such that (1) bolsters the defense case, (2) potentially impeaches prosecution witnesses, or (3) is likely to lead to the discovery of admissible evidence.).
[4] *See Bagley*, 473 U.S. at 676; *see also United States v. Tarantino*, 846 F.2d 1384, 1414-15 n.11 (D.C. Cir. 1988) (although the coverage of *Brady* and the *Jencks* Act sometimes overlap, especially with respect to bias and impeachment material of potential Government witnesses, the *Jencks* Act limitations on discovery do not lessen the Government's obligations under *Brady*); *United States v. Starusko*, 729 F.2d 256, 263 (3d Cir. 1984) ("compliance with the statutory requirements of the *Jencks* Act does not necessarily satisfy the due process concerns of *Brady*."); *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir. 1979); *United States v. Owens*, 933 F. Supp. 76, 84 (D. Mass. 1996) ("Given the important nature of the constitutional rights at stake, this Court rules that the *Brady* requirement must effectively trump the *Jencks* Act where the two are in direct conflict."); *United States v. Thevis*, 84 F.R.D. 47, 54 (N.D. Ga. 1979) ("In the face of this conflict, this Court believes that the better rule requires the pretrial disclosure of *Brady* material in accordance with the timetable set forth in this order even though that material is part of a *Jencks* Act statement.").
[5] *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (stating that the duty of disclosure is not limited to evidence in the actual possession of the prosecutor.  Rather, it extends to evidence in the possession of the entire prosecution team, which includes investigative and other Government agencies); *see also Strickler*, 527 U.S. at 275 n.12 (acknowledging that the prosecutor has constructive knowledge of all favorable evidence known to those acting on the Government's behalf, even if no actual knowledge of materials and even if materials are in the file of another jurisdiction's prosecutor); *United States v. Safavian*, 233 F.R.D. 205, 207 (D.D.C. 2006) (stating that the prosecutor has a duty to search and disclose *Brady* evidence, within reason, in the possession of all Executive Branch agencies and departments, rather than solely the agencies "closely aligned" with the prosecution).



Pretrial disclosure of statements that qualify as both *Jencks* material and *Brady* material should also be disclosed before trial to allow effective use in the preparation of the defense case. Should you not comply with this request, and *Brady* material is delivered immediately before or during trial, we shall be forced to seek sanctions or a continuance to evaluate the effect of these materials at trial.

The potential *Brady* material requested includes, but is not limited to, the following:

*Information regarding Government witnesses:*

- Exculpatory and/or impeachment Grand Jury testimony. *See Sykes v. United States*, 897 A.2d 769, 777-78, 780-81 (D.C. 2006).

- Agreements/Deals with Government witnesses. *See, e.g., Giglio v. United States*, 405 U.S. 150, 154 (1972) (stating failure to disclose promise of immunity in exchange for testimony violates *Brady*); *United States v. Bagley*, 473 U.S. 667, 676, 682 (1985) (stating failure to disclose payment of $300 to two key Government witnesses violates *Brady*); *Singh v. Prunty*, 142 F.3d 1157, 1161-63 (9th Cir. 1998) (finding failure to disclose that star witness had a favorable deal with the Government to avoid very serious charge is *Brady* violation); *United States v. Smith*, 77 F.3d 511, 513-16 (D.C. Cir. 1996) (finding failure to disclose deal in which state charges were dismissed as part of federal plea is *Brady* violation); *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 891, 896 (D.C. Cir. 1999) (remanding to determine *Brady* information with instruction to district court to require the U.S. Attorney's office to review the records in the possession of the prosecution team for evidence indicating that a Government informant who provided information leading to the defendant's arrest had a deal with the prosecution).

- Payments to witnesses. *See, e.g., Mastracchiio v. Vose*, 274 F.3d 590, 602-03 (1st Cir. 2001) (stating knowledge of witness payments or favors made by the Witness Protection team is *Brady* material); *In re Sealed Case (Brady Obligations)*, 185 F.3d 887, 894 (D.C. Cir. 2004) (stating failure to disclose cooperation agreement that includes payments to witness is *Brady* information).

- Criminal history of informants. *See, e.g., Crivens v. Roth*, 172 F.3d 991, 996-99 (7th Cir. 1999) (stating failure to disclose crimes committed by Government witness is *Brady* even when Government witness used aliases); *Carriger v. Stewart*, 132 F.3d 463, 480-82 (9th Cir. 1997) (stating failure to obtain or disclose Department of Corrections file that would have showed lengthy criminal history, and history of lying to police and blaming others for his own crimes, is *Brady*).

- Bias of Government witnesses. *See, e.g., Schledwitz v. United States*, 169 F.3d 1003, 1014-15 (6th Cir. 1999) (stating *Brady* obligation for government to reveal



witness portrayed as neutral and disinterested expert actually had been investigating defendant for years); *United States v. O'Connor*, 64 F.3d 355, 359-60 (8th Cir. 1995) (finding failure to disclose threats by one Government witness against another and attempts by that same Government witness to influence testimony of another Government witness is *Brady*); *Reutter v. Solem*, 888 F.2d 578, 581-82 (8th Cir. 1989) (finding failure to inform defense that key witness had applied for commutation and was scheduled to appear before parole board in a few days was *Brady* violation).

- Personnel files, especially of testifying officers. *See, e.g., United States v. Brooks*, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992) (stating if specific request is made, prosecutor must search personnel records of police officer/witnesses to fulfill *Brady* obligations); *United States v. Muse*, 708 F.2d 513, 516 (10th Cir. 1983) (recognizing that prosecutor must produce *Brady* material in personnel files of Government agents even if they are in possession of another agency).

- Presentence reports of testifying witnesses. *See, e.g., United States v. Strifler*, 851 F.2d 1197, 1202 (9th Cir. 1988) (stating information in probation file relevant to Government witness credibility must be disclosed, and could not be deemed privileged by making it part of probation file); *United States v. Carreon*, 11 F.3d 1225, 1238 (5th Cir. 1994) (finding prosecution should allow trial court to conduct *in camera* review of presentence reports of Government witnesses to determine whether they contain *Brady/Giglio* material).

- Misconduct by Government witnesses. *See, e.g., United States v. Boyd*, 55 F.3d 239, 243-45 (7th Cir. 1995) (finding failure to disclose drug use and dealing by prosecution witness, and "continuous stream of unlawful favors" including phone privileges, presents, special visitors, provided by prosecution to witnesses considered *Brady* material).

- Police perjury in motions hearings. *See, e.g., United States v. Cuffie*, 80 F.3d 514, 517-19 (D.C. Cir. 1996) (finding failure to disclose perjury by police officer during motion to seal proceeding considered material *Brady* evidence relevant to impeachment).

- Knowledge of police intimidation of witnesses. *See, e.g., Guerra v. Johnson*, 90 F.3d 1075, 1078-80 (5th Cir. 1996) (finding failure to disclose police intimidation of key witnesses and information regarding suspect seen carrying murder weapon minutes after shooting considered *Brady*).

*Other suspect information:*



- Contradictory eyewitness testimony. *See, e.g., Clemmons v. Delo*, 124 F.3d 944, 949-52 (8th Cir. 1997) (finding failure to disclose internal Government memo generated on day of prison killing which indicated that eyewitness saw someone else commit murder is *Brady*).

- Prior identifications of other suspects. *See, e.g., White v. Helling*, 194 F.3d 937, 944-46 (8th Cir. 1999) (granting habeas relief in 27 year old robbery/murder case because of failure to disclose that Government's chief eyewitness had originally identified someone else and had identified defendant only after several meetings with police); *Hudson v. Whitley*, 979 F.2d 1058, 1065 (5th Cir. 1992) (remanding on *Brady* grounds because of failure to disclose that the only eyewitness had originally identified third party, and that third party had originally been arrested).

- Prior statements that eyewitness could not identify anyone. *See, e.g., Spicer v. Roxbury*, 194 F.3d 547, 557-60 (4th Cir. 1999) (failing to disclose witness' prior inconsistent statement that he did not see defendant is *Brady* violation); *Lindsey v. King*, 769 F.2d 1034, 1041-43 (5th Cir. 1985) (failing to disclose initial statement of eyewitness that he could not make an identification because he never saw murderer's face is *Brady* violation).

- Arrests/investigations of other suspects. *See, e.g., Banks v. Reynolds*, 54 F.3d 1508, 1517, 1520 (10th Cir. 1995) (finding a failure to reveal that another individual or individuals had been arrested for same crime was *Brady* violation); *Smith v. Secretary of New Mexico Department of Corrections*, 50 F.3d 801, 829-835 (10th Cir. 1995) (finding failure to disclose information indicating that uncharged third party had committed the offense was *Brady* violation); *Miller v. Angliker*, 848 F.2d 1312, 1321-23 (2d Cir. 1988) (failing to disclose information that would suggest another person committed offense is *Brady* violation); *Bowen v. Maynard*, 799 F.2d 593, 610-12 (10th Cir. 1986) (finding *Brady* violation where prosecution failed to disclose that police considered another man a suspect when the other man better fit the description of eyewitnesses, was suspected by law enforcement in another state of being hitman, and carried same weapon used in murders).

*Inconsistent statements*

- Contradictory or inconsistent statements. *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963) (failing to turn over statement by co-defendant that he had planned the killing, and that co-defendant had performed actual killing is violation of due process); *Kyles v. Whitley*, 514 U.S. 419 (1995) (failing to disclose inconsistent eyewitness and informant statements, and list of license numbers compiled by police that did not show Kyles's car in supermarket parking lot is *Brady* violation).



- Inconsistent notes; prosecutor and law enforcement notes from interviews with Government witnesses.  *See, e.g., United States v. Service Deli, Inc.*, 151 F.3d 938, 943-44 (9th Cir. 1998) (finding a *Brady* obligation to turn over original notes from witness interview that contained three keys pieces of impeachment information that showed that story had changed, change may have been brought about by threats of imprisonment, and witness had claimed to have suffered a stroke);  *United States v. Pelullo*, 105 F.3d 117, 122-23 (3d Cir. 1997) (failing to disclose rough notes of FBI and IRS agents corroborating defendant's version of events and impeaching testimony of government agents is violative of *Brady*).

- Statements of potential witnesses not called to testify.  *See, e.g., United States v. Frost*, 125 F.3d 346, 383-84 (6th Cir. 1997) (finding *Brady* violation when government does not disclose statement of potentially exculpatory witness, but instead tells defense that that witness would provide inculpatory information if called to testify).

- Expert reports inconsistent with the Government case or tends to support the defense case.  *See, e.g., Ex Parte Mowbray*, 943 S.W.2d 461, 466 (Tex. Crim. App. 1996) (finding *Brady* violation when State failed to disclose exculpatory expert report);  *United States v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985) (finding *Brady* violation when Government failed to disclose ballistics worksheet that showed gun defendant was accused of firing was inoperable);  *State v. DelReal*, 593 N.W. 2d 461, 464, 466 (Wis. App. 1999) (finding *Brady* violation when Government failed to disclose fact that a swab for gunshot residue had taken place, which would have provided defendant the opportunity to have swabs tested and also would have allowed defendant to challenge reliability/credibility of police investigation and testimony).

- Mitigating evidence in aid of sentencing.  *See, e.g., Brady v. Maryland*, 373 U.S. 83, 87 (1963); CRIMINAL JUSTICE STANDARDS FOR THE PROSECUTION FUNCTION § 3-7.3(b) (AM. BAR ASS'N 2015), available at https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/, ("The prosecutor should disclose to the defense and to the court, at or before the sentencing proceeding, all information that tends to mitigate the sentence and is known to the prosecutor, unless the prosecutor is relieved of this responsibility by a court order.").

Recognizing the Government's heavy caseload, and the seriousness of prosecutorial responsibilities, we still must ask that *Brady* material be turned over as soon the Government learns of it.  Pretrial disclosure of *Brady* is consistent with the recommended legal, professional, and ethical duties of a prosecutor.  We understand that this request places additional affirmative burdens on the Government's attorney(s) to investigate and determine potential difficulties in the prosecution's case.  However, prompt disclosure of *Brady* material will facilitate a fair and efficient trial within the constitutional requirements of the Due Process Clause.



6. **Evidence Affecting Perception, Recollection, and Ability to Communicate or Truthfulness.**  Defendant requests such information be produced, including any evidence and medical and/or psychiatric reports or records, tending to show that any prospective witness's ability to perceive, recall, communicate, or tell the truth may be impaired or otherwise affected. This request is to be construed as encompassing any evidence that the prospective witness has ever used narcotics or controlled substances and/or whether the prospective witness is or otherwise has been an alcoholic.  *See Chavis v. North Carolina*, 637 F.2d 213 (4th Cir. 1980).

7. **Tangible objects.**  Defendant requests, pursuant to Federal Rule of Criminal Procedure 16(A)(2)(C), the opportunity to inspect and copy, as well as test (if appropriate) all other documents and/or tangible objects, including alleged contraband, photographs, books, papers, buildings, automobiles, or places, or copies, depictions, or portions thereof, which are material to the defense or which are intended for use by the Government in its case-in-chief, or that belong to Defendant.

8. **Identification Procedures.**  With respect to each identification made, Defendant requests that the Government provide the following information:  the number of police officers present for the identification procedure, the location of officers vis-a-vis the witness during the identification procedures, the name and address of any other person identified by the witness, the specific words of identification for the witness, date and location of the identification for the witness, the circumstances of the witness's observations and identification, including but not limited to, the witness's opportunity to observe, distance, lighting, the kind of lighting used, and any other circumstances relating to the reliability of the alleged identification. Additionally, if applicable, provide information regarding any refreshment procedures used.

9. **Preservation of Evidence.**  Defendant requests that all evidence, which is to include all video tapes, surveillance tapes (audio and/or video), all law enforcement notes, or any other physical evidence that is in the possession, custody, or control of the Government and/or any agent thereof which relates to the investigation, arrest, and prosecution of this matter, be preserved.

10. **Informants and Cooperating Witnesses.**  Defendant requests that all relevant information concerning informants and cooperating witnesses involved in this case be produced. As a minimum, the Government is obligated to disclose the identity and location of any informants or cooperating witnesses, as well as the identity and location of any other percipient witness unknown to Defendant.  *See Rovario v. United States*, 353 U.S. 53 (1957).

11. **Evidence of Bias and/or Motive to Lie.**  Defendant requests any evidence of a witness's bias and/or motive to lie, including any evidence known to the attorney for the Government, any law enforcement officer, or any other person involved in the investigation, arrest, and prosecution of this matter, relating to whether a Government witness has any bias or prejudice against Defendant, and/or has any motive to lie or fabricate testimony.  *See*



*Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988).

12. **Impeachment Evidence.** Defendant requests impeachment evidence, including any evidence known (or which should have been known by the exercise of due diligence) by the Government's attorney, law enforcement officers or any other individual involved in the investigation, arrest, and prosecution of this matter, relating to whether any Government witness has engaged in any criminal conduct, whether or not that conduct resulted in a criminal conviction, and whether any Government witness has at any time, made a statement favorable to the defense as it relates to either guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83 (1963).

13. **Criminal Investigation of Any Government Witness.** Defendant requests information related to the criminal investigation of any Government witness, which is to be read as including any evidence, known (or that reasonably should have been known through the exercise of due diligence) to the attorney for the Government, law enforcement, or any other individual involved in the investigation, arrest, and prosecution of this matter, pertaining to any investigation into the conduct of any prospective Government witness, whether such investigation be by Federal, State, or local authorities. *See United States v. Chitty*, 760 F.2d 425 (2d Cir. 1985).

14. **Names of Witnesses Arguably Favorable to Defendant.** Defendant specifically requests the names of any witnesses arguably favorable to Defendant, which is to include the names of any individuals, who are known (or which should have been known by the exercise of due diligence) to the Government's attorney, law enforcement, or any other individual involved in the investigation, arrest, and prosecution of this matter, and who could provide arguably favorable information for Defendant regardless of whether such information pertains to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1979).

15. **Statements Relevant to the Defense.** Defendant seeks the production of any statements relevant to the defense of this matter, including any statement that may be "relevant to any possible defense or contention" that Defendant might assert. *See United States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982). This includes any statements made by any percipient witnesses.

16. ***Jencks* Act Material.** Defendant specifically **requests the early disclosure** of all *Jencks* Act material so that any unnecessary delay may be avoided if and when this case comes to trial. Early disclosure will allow for the smooth and orderly administration of this trial as defense counsel, with early disclosure, will be able to adequately prepare for cross-examination, thus precluding the need for unnecessary stoppages at trial.

17. **Law Enforcement Files.** Defendant requests that the Government inspect the personnel files of all potential law enforcement witnesses to determine if any relevant *Brady* or *Giglio* material is contained therein. Such information shall include, but not be limited to, any



other case wherein said witness provided false or misleading testimony, and/or any proceeding wherein said witness had been disciplined for improper conduct and/or behavior.

18. **Expert Witnesses.** Defendant requests that the Government disclose the identity, qualifications, and summary of testimony of any expert witness the Government intends to call in its case-in-chief.

19. **Electronic Surveillance.** Defendant specifically requests the production of any electronic surveillance that may have been conducted in this case. This request is to be construed as to include, but not be limited to, audio and/or video surveillance.

20. **Presentence Reports.** Defendant seeks the production of any presentence reports, federal or state, related to any Government witness that may be called to testify in either the Government's case-in-chief or in rebuttal.

Additionally, Defendant also herein requests the Government provide pretrial notice of any evidence it intends to introduce pursuant to Fed. R. Evid. 404(b) or evidence the Government contends is inextricably intertwined.

Finally, Defendant also herein requests, pursuant to Fed. R. Crim. Pro. 12(b)(3) and 12(b)(4), disclosure of any evidence that is arguably subject to suppression.

Thank you for your prompt consideration of this matter. Should you have any questions, or want to discuss further, please do not hesitate to contact me.

                Respectfully submitted,

                */s/ Joshua F. Barnette*
                Joshua F. Barnette
                Counsel for Bryan D. Conley