UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                   PLAINTIFF

v.                                                   CRIMINAL ACTION NO. 3:19-CR-19-BJB

BRYAN DOUGLAS CONLEY                                                       DEFENDANT

## RESPONSE TO MOTION TO DISMISS FOR SPEEDY TRIAL

Defendant Bryan Douglas Conley moves to dismiss his case arguing that speedy trial act

has been violated.  Conley's case has resulted no less than five changes of counsel, a competency

examination during COVID-19, his flight from custody facing a superseding indictment for

kidnapping, and numerous submissions of harassing and threaten communications directly to the

Court, a defense motion declaring the case complex, and numerous motions to continue all filed

by Conley. The United States even prepared for trial in July 2022 and filed its pretrial filings.

On the eve of his new trial, that he claims he so very much wants, he has moved to dismiss

claiming a speedy trial clock violation and Sixth Amendment Speedy Trial act violation.

The United States requests a hearing to discuss the Sixth Amendment claims brought by

Conley either in person or telephonically.  The United States conducted an arduous review of the

docket and concludes the that the record reflects non-excludable time exceeding 70 days.  Based

upon the review of the United States, there appears to be periods of delay that were technically

not excluded.  Therefore, the United States would agree that dismissal without prejudice is likely

the appropriate remedy unless the Court views a different remedy or a different calculation of

excludable time.  Because Conley primary contributor to the reasons for delay in his case,

Conley fails on his burden for a Sixth Amendment Speedy trial act claim.  Therefore, any remedy here should be without prejudice.  The United States would obviously seek to reindict Conley immediately and bring him to trial.  Nevertheless, the United States believes the issue of dismissing with or without prejudice should be heard by the Court should it wish to consider the matter.

## I.      Defendant Conley's Speedy Trial Act Clock

If the district court fails to bring a defendant to trial within seventy days, the indictment "shall be dismissed on motion of the defendant," either with or without prejudice. 18 U.S.C. § 3162(a)(2). However, the statute delineates a number of situations in which the district court may exclude time from the seventy-day calculation, effectively tolling the STA clock. Relevant in the instant case is § 3161(h)(1)(F), which excludes "Any period of delay resulting from other proceedings concerning the defendant, including but not limited to ... delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion." United States v. Levon, 127 F. App'x 865, 868 (6th Cir. 2005).

Conley was originally indicted on February 20, 2019 for ten counts of violations of Title 18, United States Code, Section 875 (interstate threats).  DN 11. On February 21, 2019, Conley was arraigned and pleaded not guilty through counsel.  Jury trial was scheduled for April 29, 2018.  DN 16.  The day of the arraignment does not count.  On February 22, 2019 to April 15, 2019,  52 days of non-excludable time elapsed.[1] On April 16, 2019, Conley moved to continue trial.  DN 20. The day the motion to continue was filed does not count.  On April 24, 2019, The

---

[1] Conley incorrectly asserts hat 54 days elapsed between February 21, 2019 to April 16, 2019.  The day of the hearing and the day of the filing of the motion should not be counted.

Court granted the motion to continue and excluded time to June 26, 2019 form the speedy trial calculations.  DN 21.

On June 14, 2019, the grand jury issued a superseding indictment charging Kidnapping (18 U.S.C. §  1201(a)(1); Bank Fraud (18 U.S.C. §  1344) and Aggravated identity theft (18 U.S.C. §  1028A), and ten counts for violations Interstate Threats (18 U.S.C. §  875).  DN 22.

On June 19, 2019, Conley filed a motion to waive his personal appearance at arraignment (the motion included Conley's signature acknowledging that Conley received a copy of the Superseding Indictment).  DN 26.

On June 20, 2019, Conley's not guilty plea (with a waiver of appearance) was entered for the superseding indictment.  DN 27.  On June 21, 2019, the United States filed a Motion for Revocation of Bond and Issuance of Arrest Warrant.  DN 29.  The motion alleged Conley's ankle monitor had been removed near Smith's Grove, Kentucky and failure to wear the monitor was a violation of his bond.  The Court issued an arrest warrant. *Id.*  On June 26, 2019, the Court received notice of arrest of Bryan Conley in Ohio.  Conley was arrested on the federal warrant in the Northern District of Ohio and had to be transferred pursuant to Fed. R. Crim. P. 5 back to the Western District of Kentucky. DN 33.  The rule 5 documents were received on June 26, 2019.

On June 26, 2019, Conley's first attorney filed an ex parte motion to withdraw as counsel.  DN 32.  On July 2, 2019, the Court entered an order reassigned a status conference because the defendant was unavailable.  The conference date was continued to July 16, 2019. DN 36.  July 8, 2019, Ex parte status of counsel hearing.  DN 37. On July 9, 2019, the District Court referred the ex parte motion to withdraw as counsel to the magistrate to conduct a hearing. DN 37.

On July 9, 2019, the Court scheduled the statues conference for July 16 to be rescheduled by separate order.  DN 38.  July 9, 2019, hearing on motion to revoke bond.

On July 15, 2019, the magistrate court issued an order removing the federal defender and appointing private CJA counsel, Jeniffer Cullota.  DN 39.  On July 15, 2019, the magistrate court entered an order revoking Conley's bond.  DN 40.  All of the time until July 16, 2019 should be excluded because the because defendant was unavailable as the court noted in the order.  DN 36.

On July 17, 2019, the United States moved for a protective order for Discovery.  DN 41.  On July 22, 2019, the protective order was entered on July 22, 2019.  DN 42.

On July 22, 2019 the speedy trial clock began to run again.  July 23, 2019.

On July 24, 2019, the Court set a status conference by agreement of the parties for scheduled for August 13, 2019.  DN 43.  Although there was not specific exclusion of time, Conley's new counsel had just recently been appointed to the case, after prior counsel's motion to withdraw had been heard.  Conley had been arraigned in absentia and apparently crafted a scheme to cut off his ankle monitor and flee.  20 days elapsed on the clock.

On August 12, 2019, the Court rescheduled the status conference that day to September 17, 2019 by agreement and excluded time for speedy trial. See DN 44.

August 12, 2019 to September 17, 2019 was excluded from Speedy Trial.  DN 44.

On September 19, 2019, the grand jury issued a Second superseding indictment adding a charge for Mann Act (18 U.S.C. § 2421(a)), Kidnapping (18 U.S.C. § 1201(a), Bank Fraud (18 U.S.C. § 1344), Aggravated Identity Theft (18 U.S.C. § 1028A, and ten counts of Interstate Threats (18 U.S.C. § 875).  See DN 45.  The Mann Act charge involved a separate victim lured in the same manner as the victim in the Kidnapping.  *Id.*

On September 18, 2019, the Court scheduled a status conference. Conley's attorney mistakenly arrived at a different time than the hearing was scheduled. She met with her client. The status conference was remanded to October 29, 2019 by text order. The text order required the parties file an agreed order to exclude from the speedy trial clock the time between September 17, 2019 and to October 29, 2019. Due to inadvertent error, no agreed odder was filed. DN 48.

The order stated that the "parties are to file an **agreed order** as to the time between September 17, 2019 and October 29, 2019, as excluded in computing the time limitations specified in the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(A); (h)(7)(B).

As the record reflects, Conley's attorney inadvertently missed a hearing and no hearing was conducted. She did meet with her client that day as the record notes. The court issued a text order requesting the parties provide an order excluding time for speedy trial. Due to an inadvertent error, the parties did not submit the order as requested. The record is clear that the Court's intent to exclude this time from the speedy trial calculations which included specific time to be excluded and citation to specific provision of the statues authorizing exclusions. The United States requests this time be excluded as that was the intent of the Court.

On October 2, 2019, Conley's counsel scheduled Conley's arraignment on the second superseding indictment for October 10, 2019. DN 49.

On October 10, 2019, Conley was arraigned on the Second Superseding Indictment. DN 51. The Second Superseding charged a violations of Mann act, Kidnapping, Bank Fraud, Aggravated identity Theft, and ten counts of interstate ransom threats. The case was scheduled for status conference on October 29, 2019. DN 51.

On October 29, 2019, the court held a status conference and granted defendant's oral

motion to declare the matter complex.  The mater was continued to February 5, 2020.  DN 52.

the defendant's motion to declare the case complex was granted and continued until February 5,

2020 for a status conference.

The order found that the defendant's oral motion to declare the matter complex is

granted:

> The Court FINDS that in the end of justice served by granting of this mater
> outweigh the best interests of the public and Defendant in a speedy trial.  18
> U.S.C. §  3161(h)(7)(A).  Specifically, the Court finds that this case is so unusual
> or so complex, due to the voluminous amount of discovery, that is unreasonable
> to expect adequate preparation for pretrial proceedings or for the trial itself within
> the time limits established by the Speedy Trial Act.  18 U.S.C. §  3161(h)(7)(A),
> 3161(h)(7)(B)(ii).

DN 52.

On February 5, 2020, the Court conducted a status conference. and set another status

conference for April 8, 2020. DN 53. "The matter was previously declared COMPLEX and is

therefore removed from the time constraints of the Speedy Trial Act."  DN 53.

On March 10, 2020, Conley filed an unopposed motion for psychiatric exam/treatment.

DN 54.  As part of the motion the defendant specifically agreed "that any delay or extension of

time caused by this request should be Ordered Excludable under the Speedy Trial Statute (18

U.S.C. §§ 3161(h)(7)(A); (h)(7)(B)).  DN 54.

On March 13, 2020, the Chief District Judge in the Western District of Kentucky issued

general order No. 20-02 in response to the COVID-19 pandemic continuing all trials for 30 days

excluding time from the speedy trial calculations.    On March 20, 2020, Conley mailed a letter

to the Court.  DN 56.  On March 26, 2020, the Court directed that Conley's letter be sealed,

indicated it would grant the competency motion, and remanded the April 8, 2020 status

conference from the docket.  DN 56. On March 26, 2020, Conly wrote another pro se letter to the

Court claiming that the "Louisville DA's are sending out Bomb threats" and that he has fired his

attorney.  DN 58.        On March 30, 2020, the Court, on its own motion, ordered a psychiatric

exam under 18 U.S.C. §  4241 based on the letters submitted by Conley.  DN 58.

On April 1, 2020, the Chief Judge of the district court continued the original General

Order 20-02 until May 1, 2020.  On April 8, 2020, Conley's attorney filed an motion to withdraw

and substitute another attorney, Nathan Miller.  DN 60.  On April 9, 2020, the order was granted

substituting Nate Miller as Conley's attorney.  DN 61.  On April 17, 2020 The Chief Judge again

continued the General Order 20-02.   The order continued all trail scheduled to begin before May

29, 2020.  General Order 20-09.  On May 27, 2020, the Chief Judge continued all jury trials

scheduled to begin on or before July 10, 2020.  General Order 20-11.On July 20, 2020, Conly

wrote another letter filed in the record.  On August 6, 2020, the Court held a telephonic status

conference.  The order noted that due to the COVID-19 pandemic, order requiring movement of

inmates from on facility to another are currently not being executed.

> The time between March 26, 2020 and the resolution of the issues of competency
> after examination and hearing is excludable time under the speedy trial act, 18
> U.S.C. §  3161(h)(1)(A) and in accordance with the General Orders 20-02, 20-03,
> 20-09, and 20-11 of the United States District Court for the Western District of
> Kentucky concerning the CARES Act and emergency conditions created by the
> COVID-19 pandemic.

DN 64.

On October 6, 2020, the Court ordered an extension of an additional period of time until

November 9, 2020 to conduct Conley's Psychiatric evaluation.  DN 66.  On October 29, 2020,

Conley filed a motion for extension of Time to File/conduct evaluation from requesting an

additional 30 days from November 9, 2020 to conduct his own evaluation.  DN 67. On October

30, 2020, the Court granted the motion for additional time and extended the deadline to December 9, 2020.

On November 9, 2020, Conley sent two letters filed in the record. DN 69 and 70. On December 8, 2020, the case was reassigned to another district judge. DN 71. On December 15, 2020, Conley mailed a letter filed in the record. DN 75. On January 15, 2021, the Court held a status conference. The court scheduled another conference on February 23, 2021, and excluded the time from the speedy trial calculation. DN 76.

On February 23, 2021, the Court held a status conference and scheduled another conference for March 23, 2021. The time was excluded from the speedy trial clock. DN 77. On March 23, 2021, the Court held a status conference and scheduled another conference for May 24, 2021. The time was excluded from the speedy trial clock. DN 78. On May 24, 2021, the Court held a status conference and scheduled another conference on June 7, 2021. The time was excluded. DN 79. On June 21, 2021, the parties filed a joint status report regarding a pending competency hearing and motion for competency evaluation. On June 25, 2021, the Court referred the matter to the magistrate judge. DN 81. On July 8, 2021, the Court scheduled a hearing for July 28, 2021 regarding the competency evaluation motion. On July 28, 2021, the Competency hearing for Conley was conducted. On July 28, 2021, the United States filed an unopposed motion for status hearing. DN 85. On August 2, 2021, Conley mailed a letter to the court. On August 12, 2021, the Court issued an order finding Conley competent to proceed. DN 87. On August 17, 2021, the Court set a status hearing date regarding DN 85 on August 23, 2021. On August 23, 2021, the Court held a hearing scheduling a status conference for September 21, 2021. The time was excluded from the speedy trial calculations. DN 89.

On August 23, 2021, Conly mailed another letter. DN 90. DN 91. DN 92.

On September 21, 2021, the Court held  statues conference and scheduled another conference for November 4, 2021.  The time was excluded.  DN  93.   On October 21, 2021, Conley's attorney filed an ex parte motion to withdraw as counsel.  DN 95.

On November 2, 2021, the ex parte hearing was conducted and John Miller withdrew as counsel.  Armand Judah was appointed as counsel.  DN 98.  On November 3, 2021, the court issued the order granting the ex parte motion and appointment Armand Judah.  DN 98.

On November 4, 2021, the court issued and order setting a status conference on December 15, 2021 and excluded the time from the speedy trial clock.  DN 99.  On December 15, 2021, the Court held a status conference and set a trial date for July 18, 2022.  The court excluded the time from the speedy trial clock.  DN 101.      On March 18,2022, Conley mailed a letter accusing a federal judge of being an accomplice to Putin and asking to be allowed to go fight in Ukraine.  DN 104.      On May 19, 2022, the United States filed a notice and motion to admit flight as evidence of guilty.  DN 105.  On June 16, 2022, Conley's fourth attorney moved to withdraw.  DN 108.

On June 16, 2022, the hearing on the motion to withdraws was scheduled for June 23, 2022.  DN 110.  On June 17, 2022, the United States filed its pretrial memorandum for the trial scheduled for July 18, 2022.  DN  111.  On June 23, 2022, the Court held an ex parte hearing on the motion to withdraw as counsel.  DN 115.  On June 24, 2022, the Court issued the order appointment Joshua Barnette as counsel for Conley.  DN 115. On June 27, 2022, Conley filed a motion to continue trial requesting a period of 120 days and agreed the time should be excluded form the speedy trial calculations.  DN 117.  On July 11, 2022, the Court held a status conference granting the motion to continue and setting a trial date for February 6, 2023. The time was

excluded from the speedy trial calculations.  Conley was also ordered to refrain from submitting

ex parte and pro se communications with the Court.  DN 12.

In total, the amount of non-excludable delay appears to exceed 70 days from review of

the docket.

### II. Conley Sixth Amendment Claim should be denied.

Conley also alleges there was a violation of his Sixth Amendment right to a speedy trial.

Accordingly, if the Speedy Trial Act has not been violated--and it was not in Conley's case--it

would be "unusual" for a court to decide that the Sixth Amendment right to a speedy trial has

been violated.  See United States v. O'Dell, 247 F.3d 655, 666-67 (6th Cir. 2001); United States

v. Nabors, 901 F.2d 1351, 1356 (6th Cir. 1990); United States v. DeJesus, 887 F.2d 114, 116 n.1

(6th Cir. 1989).  Conle's claim should be rejected because he has had less than 5 changes of

counsel, he fled from prosecution, he underwent a competency evaluation, and his case was

during the height of COVID-19.

The Supreme Court has routinely held that "[t]he right of a speedy trial is necessarily

relative. It is consistent with delays and depends upon circumstances."  Barker v. Wingo, 407

U.S. 514, 522 (1972) (citations omitted).  Accordingly, the key inquiry is whether there was an

"orderly expedition" of the process--"not mere speed."  Smith v. United States, 360 U.S. 1, 10

(1959).  One look at the docket sheet in this case shows that this case was not languishing, there

was an "orderly expedition" of the process.

In Barker, the Supreme Court listed "some of the factors which courts should assess in

determining" whether there has been a constitutional speedy trial violation.  Those factors are

length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to

the defendant are considered.  Id. at 530-32. No single factor is determinative; rather, they are considered and balanced together with other relevant circumstances.  Id. at 533.

1. **Length of delay not uncommonly long for this type of case with five changes of counsel, defendant flight from prosecution, COVID-19 delays, and a competency evaluation.**

For Sixth Amendment purposes, "[t]he length of delay is measured from the earlier of the date of indictment or arrest to the defendant's trial."  United States v. Bass, 460 F.3d 830, 836 (6th Cir. 2006).  In Conley's case, the time started running on (the date of the original indictment) and the would time end (at the date of trial ) on February 6, 2023.  Conley is correct in his brief that when there has been over a year's delay, there is a "presumptively prejudicial delay to warrant further investigation of the Barker factors."  See Norris v. Schotten, 146 F.3d 314, 326-27 (6th Cir. 1998).

2. **Reasons for Delay/Who Caused the Delay**

The second consideration, the reasons for the delay, "calls for a judicial assessment of relative blameworthiness."  United States v. Schreane, 331 F.3d 548, 553-54 (6th Cir. 2003) (citations omitted).  The question is "whether the government or the criminal defendant is more to blame for [the] delay."  Id. (citations omitted). "Valid reasons" for delay, like unavailable witnesses (or a global pandemic) weigh in favor of the United States.  See Id. at 554.

A look at the docket sheet shows how busy the court and the parties were in trying to move forward with this complex case, with a defendant who unlawfully fled, changed counsel a total of five times, had his case declared complex, and underwent an evaluation for competency during the height to COVID-19 protocols.  And throughout the case, the court held regular telephonic status conferences to keep the case moving. During all, or almost all, of the telephonic

conferences, the court would find excludable time for Speedy Trial Act purposes. No attorney ever objected. (See generally Docket Sheet).

When Conley's attorney Armand Judah moved to declare the case complex, the court noted there was voluminous discovery in case requiring time to review. Conley's current counsel requested 120 days to prepare for the current scheduled trial date of February 6, 2023. Continuity of Conley's counsel has caused significant delay.

There is also COVID and Conley's competency evaluation. When 2020 arrived and brought Covid-19 and its restrictions with it, new problems arose. Even though all time for Conley's competency evaluation is excludable, COVID caused delays in that process. Even if, we could have tried Conley in 2020, the court generally continued all trials due to COVID. The Court issued multiple general orders addressing the scheduling issues caused by COVID.

Conley complained about the time it took to accomplish his competency evaluation. Again, this was during COVID and challenges with the process were experience equally around the country at the time. Marshalls and BOP allocated space and require bed space for defendant's ordered for competency. Any delay is attributable to issues with availability of space and COVID related safety concerns.

Conley claims that the government had all the information regarding the second superseding indictment at the time the first indictment was filed. The United States continued to investigate Conley matter after the initial indictment. It was not until the June 2019, indictment that Kidnapping, Bank Fraud, and Aggravated Identify Theft charges were included. While it is true that chronologically the events in the Second superseding indictment occurred before the conduct in the Original and First Superseding Indictment, the United States was unaware of the

information at the time of the original charge and learned of it later and initiated and

investigation and charges.  Surely, Conley is not suggesting we would rush into charging

decisions without a thorough factual investigation that would required for such serious charges.

His argument is without merit.  Conley's indictments adding charges occurred in a diligent and

timely fashion between February to September 2019.

United States was ready for trial in July 2022, as indicated by the filling of the pretrial

memorandum, but instead of proceeding to trial, Conley changed attorneys yet again and

Conley's motion to continue was granted with agreement from the United States.  I should be

noted that all continuances and additional status conference dates, were all by agreement with no

objection to additional dates and continues from anyone.  Conley's attorneys agreed the time

would be excluded for speedy trial purposes.

On December 7, 2020, however, the court entered a text order moving the February trial

because the chief judge had issued General Order 20-25 canceling all jury trials in the district

through February 26, 2021, due to Covid conditions.  (R. 438 Text Order).

From the preceding discussion, the "reasons for the delay" are legitimate and do not

weigh in favor of Conley's claimed speedy trial violation.  See 18 U.S.C. § 3161(h)(7)(B)(ii)

(case complexity is an acceptable reason for tolling Speedy Trial Act deadlines); United States v.

Zabawa, 719 F.3d 555, 563 (6th Cir. 2013) (defendant is the cause for delay when he agrees to

postpone trial); Richardson, 793 F.3d at 624 ("The resolution of pretrial motions is viewed as a

'presumptively justifiable reason[ ]' for delay.").

Moreover, Conley caused delay by his "complaints" about counsel when he said he was

really not complaining about them until he insisted that they file a frivolous motion. A defendant

is more to blame when the delay is caused by his antagonistic relationship with defense counsel.

United States v. Williams, 753 F.3d 626, 633 (6th Cir. 2014).

### 3. Defendant's Assertion of his Right

As discussed in addressing the standard of review, it is questionable whether Conley even asserted a speedy trial claim. Among his general complaints pro se letters including ones with vulgar and incomprehensible utterings. DN 55, DN 69, DN 86, DN 92, and DN 195. The Court noted that because Conley was represented he was to go through his attorney communicate with the court and struck some of his communications. Never once did any attorney make this request on his behalf. Importantly, none of his attorneys nor Conley ever discussed filing a motion to dismiss based on speedy trial grounds--and no motion was ever filed. And even if Conley's vague complaint counts as an "assertion," it should be viewed in light of Conley's "other conduct" such as his reference of profanity toward federal judges. See United States v. Loud Hawk, 474 U.S. 302, 314 (1986) ("Although the Court of Appeals found that respondents have repeatedly moved for dismissal on speedy trial grounds . . . that finding alone does not establish that respondents have appropriately asserted their rights."); United States v. Young, 657 F.3d 408, 417 (6th Cir. 2011)("[W]hile Young may have asserted his right, he never did so in a manner that firmly demanded he be tried.").

### 4. Actual Prejudice to the Defendant

Other than being detained while waiting for the trial, Conley claims no prejudice from the any "delay." Conley was originally release GPS monitoring, in June 2020, his GPS monitor was removed and fled. Conley was subsequently detained. Conley caused his own detention. Conley must show specifically how he was prejudiced. See Zabawa, 719 F.3d at 563. He has not.

Analysis of the <u>Barker</u> factors do not show error, plain or otherwise, regarding a Sixth Amendment speedy trial violation.

### 5. <u>A dismissal, if warranted, should be without Prejudice.</u>

Conley fails to show prejudice warrant a dismissal with prejudice. It would be unfair to the victims and the United States for Conley's case to be dismissed with Prejudice. When the government has used reasonable diligence to pursue a defendant, the defendant must show that the delay caused "actual prejudice" to his defense. Actual prejudice is determined by examining whether the defendant has suffered (1) oppressive pretrial incarceration; (2) anxiety and concern; and (3) impairment to his defense. See Barker, 407 U.S. at 532, 92 S.Ct. 2182. Conley does not make any allegations that his defense has been impaired. He of course has been incarcerated due to his own actions while on bond. He fails to meet the standard and any remedy should be without prejudice.

### CONCLUSION

The United States defers to the Court's calculations and judgement as to whether the speedy trial act was violated. Upon review of the United States, it appears that over 70 days of non-excludable delay have passed. The United States did not cause the delay in Conley's case, he did. Therefore, his Sixth Amendment claim should be denied and any dismissal should be without prejudice. The United States also respectfully requests a status to discuss whether the

matter should be dismissed with or without prejudice by separate hearing.

Respectfully submitted,

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

*s/ Joshua Judd*
Assistant U.S. Attorney
717 West Broadway
Louisville, KY 40202
(502) 582-5911

## CERTIFICATE OF SERVICE

I certify that this pleading was electronically filed using the Court's ECF system on

January 23, 2023, with notice to counsel for defendant.

*s/ Joshua Judd*
Assistant U.S. Attorney

16