UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA, Plaintiff,

v. Criminal Action No. 3:19-cr-19-DJH

BRYAN DOUGLAS CONLEY, Defendant.

\* \* \* \* \*

## MEMORANDUM AND ORDER

This matter is set for trial on February 6, 2023. (Docket No. 122) Following four changes in defense counsel and multiple continuances either requested or not objected to by the defense, counsel for Defendant Bryan Douglas Conley informed the Court at the final pretrial conference that he would be filing a motion to dismiss based on speedy-trial concerns. (*See* D.N. 160) Conley now moves to dismiss the case with prejudice under the Speedy Trial Act and the Sixth Amendment. (D.N. 157) The United States concedes a Speedy Trial Act violation but maintains that the dismissal should be without prejudice. (D.N. 167) The Court heard oral argument on the motion on January 30, 2023. (D.N. 171) After careful consideration, the Court will dismiss the case without prejudice for the reasons explained below.

**I.**

Conley was indicted on February 20, 2019, on ten counts of making interstate threats in violation of 18 U.S.C. § 875(c). (D.N. 11) A superseding indictment was returned on June 4, 2019, charging one count each of kidnapping by inveigle and decoy under 18 U.S.C. § 1201(a)(1); bank fraud under 18 U.S.C. § 1344; and aggravated identity theft under 18 U.S.C. 1028A. (D.N. 22) On September 18, 2019, the second superseding indictment added a single

1

count of interstate transportation for prostitution under 18 U.S.C. § 2421(a). (D.N. 45) The case was declared complex on October 29, 2019, upon motion by the defense. (D.N. 52, PageID.203)

Conley was initially represented by the Federal Defender's Office. (*See* D.N. 6) The Federal Defender withdrew on July 12, 2019 (D.N. 39); since then, Conley has cycled through four more lawyers, both appointed and retained. (*See id.*; D.N. 61; D.N. 98; D.N. 115) Despite being represented by counsel and warned repeatedly that such communications are inappropriate, Conley has sent a number of letters directly to the Court. (*See, e.g.*, D.N. 131) Conley was released on bond in early February 2019, with travel restricted to Texas and the Western District of Kentucky (D.N. 4; D.N. 7; D.N. 9), but his bond was revoked in mid-July after his ankle monitor was removed and he was found in Ohio. (D.N. 40; *see* D.N. 29)

Conley argues that the delay in this case violates his statutory and constitutional rights to a speedy trial. (D.N. 157) The United States acknowledges that a Speedy Trial Act violation has occurred but contends that neither the statute nor the Sixth Amendment requires dismissal with prejudice here. (D.N. 167) As explained below, the Court agrees with the prosecution.

## II.

**A.    Speedy Trial Act**

"[T]he Speedy Trial Act generally requires a trial to begin within 70 days of the filing of an information or indictment or the defendant's initial appearance." *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see* 18 U.S.C. § 3161(c)(1). But the Act carves out various exclusions from the 70-day limit, both automatic and discretionary. The first category includes, inter alia, "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant," § 3161(h)(1)(A); "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other

prompt disposition of, such motion," § 3161(h)(1)(D); and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," § 3161(h)(1)(H). Meanwhile, subsection (h)(7)(A) authorizes so-called "ends-of-justice continuances" at the Court's discretion, *Zedner*, 547 U.S. at 498, by excluding

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

§ 3161(h)(7)(A); *see Zedner*, 547 U.S. at 498-99.

"If a trial does not begin on time" and the defendant files a properly supported motion to dismiss, "the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice." *Id.* at 499; *see* § 3162(a)(2). Thereafter, "even if 'the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned . . . within six calendar months of the date of the dismissal.'" *Zedner*, 547 U.S. at 499 (quoting 18 U.S.C. § 3288).

"[T]he filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment." *Sylvester v. United States*, 868 F.3d 503, 508 (6th Cir. 2017) (quoting *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994)). There are thus three clocks at issue in this case: one for the original indictment and one for each of the superseding indictments. *See id.* at 508-09, 511. As detailed below, more than 70 non-excludable days have elapsed as to each of the indictments.

    **1.    Original Indictment**

The original indictment was returned on February 20, 2019 (D.N. 11), and Conley was arraigned on February 21, 2019 (D.N. 16). The speedy-trial clock was tolled **53 days** later when defense counsel filed a motion to continue the trial. (D.N. 20) That motion was granted on April 23, 2019, and the Court found the period between its April 23 order and June 26, 2019, to be excludable under the Speedy Trial Act's ends-of-justice provision.[1] (D.N. 21) On June 21, the United States moved to revoke Conley's bond (D.N. 29), again tolling the clock. *See* § 3161(h)(1)(D). The motion was granted on July 12, 2019. (D.N. 40) The same day, the Court granted defense counsel's motion to withdraw (D.N. 32) and appointed new counsel to represent Conley. (D.N. 39)

The clock ran for **4 days** until July 17, when the United States filed a motion for protective order. (D.N. 41) That motion was granted on July 22, 2019 (D.N. 42), and the clock resumed the next day. *See* § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion *through* the conclusion of the hearing on, or other prompt disposition of, such motion" (emphasis added)).

On July 24, the Court set a status conference for August 13, 2019, but made no Speedy Trial Act findings. (D.N. 43) Thus, **20 days** elapsed before the Court's August 12, 2019 order continuing the August 13 conference and finding the period from August 12, 2019, to September 17, 2019, excludable. (D.N. 44)

On September 18, 2019, the Court entered an order remanding and rescheduling the September 17 status conference for October 29, 2019, due to defense counsel's failure to appear.

---

[1] The order granting the motion was signed April 23 but not entered in the docket until April 24. (*See* D.N. 21) For purposes of the Speedy Trial Act, the relevant date is the date of signature. *See United States v. Montgomery*, 395 F. App'x 177, 181 n.3 (6th Cir. 2010); *United States v. Richmond*, 735 F.2d 208, 213 (6th Cir. 1984).

(D.N. 48) The Court further ordered the parties to file, within seven days, "an agreed order as to the time between September 17, 2019 and October 29, 2019, as excluded in computing the time limitations specified in the Speedy Trial Act. 18 U.S.C. 3161(h)(7)(A); (h)(7)(B)." (*Id.*) No agreed order was filed, but neither did any party object to the excludability of that period. Because the record reflects the Court's intention to exclude the period from September 17, 2019, to October 29, 2019, pursuant to § 3161(h)(7)(A) and (B) in light of defense counsel's unavailability on September 17 (*see id.*), that period may properly be excluded. *See United States v. Guimond*, No. 98-5916, 2000 U.S. App. LEXIS 827, at *10 (6th Cir. 2000) ("[P]ost-continuance justification is not improper if the reasons given are sufficient under the Act and the record indicates those reasons were actually relied upon by the district court at the time it granted the continuance." (citing *Richmond*, 735 F.2d at 215-16)).

Following the October 29 status conference, the Court made an additional finding of excludability from October 29, 2019, to the next status conference, set for February 5, 2020. (D.N. 52) There was no Speedy Trial Act finding after the February 5 status conference, however, and so the clock ran for **33 days** until defense counsel filed an unopposed motion for psychiatric examination on March 10, 2020 (D.N. 54). *See* § 3161(h)(1)(D). On March 30, 2020, the Court ordered the U.S. Marshal to transport Conley for a competency examination. (D.N. 58)

The Speedy Trial Act excludes "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." § 3161(h)(1)(A). A separate exclusion covers "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such

5

transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." § 3161(h)(1)(F). The latter provision "establishes a *presumption* of unreasonableness, not a conclusion of unreasonableness." *United States v. Turner*, 602 F.3d 778, 785 (6th Cir. 2010). Thus, "[i]f legitimate problems arise in transporting a defendant, the government legitimately may rebut the presumption." *Id.*

Here, as noted by both parties, the order directing Conley's transportation and examination was issued in the early days of the covid-19 pandemic. (D.N. 157, PageID.696 n.4; D.N. 167, PageID.766 (citing D.N. 64)) The pandemic caused unprecedented disruptions in all aspects of the judicial process, including the transport of inmates: the Court noted in its August 7, 2020 Order that "[d]ue to the COVID-19 pandemic, orders requiring movement of inmates from one facility to another are currently not being executed."[2] (D.N. 64, PageID.233) The government has therefore rebutted the statutory presumption by pointing to "legitimate problems . . . in transporting [the] defendant," *Turner*, 602 F.3d at 785, and the Court accordingly finds that the period between March 30 and August 27, 2020, is excludable pursuant to § 3161(h)(1)(F).[3]

---

[2] In light of this evidence that inmates were simply not being transported during that time, the Court rejects Conley's suggestion that only the 14-day quarantine periods should be excluded. (*See* D.N. 157, PageID.696 n.4)

[3] The Court notes that during much of this period, no criminal trials were being held in the Western District of Kentucky due to the pandemic. *See* General Orders 20-02, 20-09, 20-11 (W.D. Ky.) (finding that the ends of justice served by the continuances outweighed the best interests of the public and defendants in speedier trials). Judge Simpson, who was then the presiding judge, invoked the General Orders in his August 7 order. (*See* D.N. 64, PageID.233)

6

From August 28 to December 8, 2020, Conley was undergoing examination at the Federal Detention Center in Miami, Florida.[4] (*See* D.N. 72) He does not dispute that this period is excludable under § 3161(h)(1)(A). (*See* D.N. 157, PageID.695-96)

It is unclear when Conley was returned to the Western District of Kentucky following examination. Unlike the initial transportation period, however, there is no evidence in the record of "legitimate problems" that would have caused delay in his return, *Turner*, 602 F.3d at 785, nor does the record reflect any other excludable period in excess of ten days between the completion of the psychiatric report on December 8, 2020, and the January 15, 2021 status conference. Thus, **27 days**—from December 19, 2020, to January 14, 2021—elapsed on the speedy-trial clock during this time.

The Court found the time between the January 15 and February 23 status conferences, the February 23 and March 23 status conferences, and the March 23 and May 24 status conferences to be excludable under § 3161(h)(7)(A). (D.N. 76, PageID.276; D.N. 77, PageID.278; D.N. 78, PageID.280) After the May 24 conference, the Court directed defense counsel to file a status report by June 7, 2021, and it made another ends-of-justice finding through that date. (D.N. 79, PageID.282) On June 21, the parties filed a belated joint status report and motion for status conference "ask[ing] the Court to adopt the findings in the competency evaluation submitted by the United States Bureau of Prisons finding that Defendant Conley is competent to stand trial and continue with the criminal proceedings." (D.N. 80, PageID.284) Thus, **13 days** elapsed on the speedy-trial clock between June 8 and June 20. The Court referred the parties' motion and the issue of competency to the magistrate judge (D.N. 81), and on July 8, 2021, the magistrate judge

---

[4] The psychiatric report was not received by the Court until December 16, 2020. (D.N. 72, PageID.251)

set the matter for a competency hearing, thereby resolving the parties' motion and restarting the speedy-trial clock. (D.N. 82)

The magistrate judge held a competency hearing on July 28, 2021. (*See* D.N. 87, PageID.296) The same day, the United States, "[i]n an abundance of caution," moved for "a status or other hearing to schedule future proceedings in [the] case," thus tolling the speedy-trial clock.[5] (D.N. 85, PageID.290) Between July 9 and July 27, **19 days** were added to the clock.

By text order entered August 18, 2021, the Court set the matter for a telephonic status conference, thereby disposing of the government's motion. (D.N. 88) Another **5 days** elapsed before the August 23, 2021 status conference. (*See* D.N. 89) Conley acknowledges that all time since August 23, 2021, has been excluded. (*See* D.N. 157, PageID.697-98; D.N. 89 (August 23, 2021–September 21, 2021); D.N. 93 (September 21, 2021–November 4, 2021); D.N. 99 (November 4, 2021–December 15, 2021); D.N. 101 (December 15, 2021–July 18, 2022); D.N. 122 (June 29, 2022–February 6, 2023))[6] In total, **174 non-excludable days** have elapsed as to the original indictment, violating the Speedy Trial Act. *See* § 3161(c)(1).

   2.   **Superseding Indictment**

The superseding indictment was returned on June 4, 2019 (D.N. 22), and Conley was arraigned on June 20, 2019 (D.N. 28). As mentioned above, the Court had previously found the period from April 23, 2019, to June 26, 2019, to be excludable. (D.N. 21) The analysis after

---

[5] The period from the July 28 competency hearing to the magistrate judge's August 12 finding that Conley was competent to proceed was likewise excludable as "delay resulting from any proceeding . . . to determine the mental competency . . . of the defendant," § 3161(h)(1)(A), and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," § 3161(h)(1)(H).

[6] In addition to the Court's ends-of-justice findings, the automatic exclusion under § 3161(h)(1)(D) was triggered by the various motions filed throughout this period, including a motion by the defense to continue the trial for "at least 120 days." (D.N. 117, PageID.401)

8

June 26, 2019, is the same as for the original indictment. Thus, a total of **121 non-excludable days** have elapsed as to the second superseding indictment, violating the Speedy Trial Act. *See* § 3161(c)(1).

### 3. Second Superseding Indictment

The second superseding indictment was returned on September 18, 2019 (D.N. 45), and Conley was arraigned on October 10, 2019. (D.N. 51) As discussed above, the record reflects the Court's intention to exclude the period from September 17, 2019, to October 29, 2019, pursuant to § 3161(h)(7)(A) and (B). (D.N. 48) The remainder of the analysis is the same as for the first two indictments. A total of **97 non-excludable days** have therefore elapsed as to the second superseding indictment, violating the Speedy Trial Act. *See* § 3161(c)(1).

### B. Sixth Amendment

The Sixth Amendment speedy-trial analysis is separate from the analysis under the Speedy Trial Act. *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000) ("Although the passage of the [Speedy Trial] Act was in part an attempt by Congress to quantify the sixth amendment right to a speedy trial, the legislation does not purport to be coextensive with that amendment." (alteration in original) (quoting *United States v. Gonzalez*, 671 F.2d 441, 443 (11th Cir. 1982))). The Supreme Court has set out a "four-factor test for determining whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Thornton*, 822 F. App'x 397, 402-403 (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). None of the factors is dispositive, "[a]nd even if all four *Barker* factors are satisfied, a court is not required to conclude that a defendant's speedy trial right has

been violated." *Id.* (citing *Barker*, 407 U.S. at 533). As explained below, the procedural history of this case does not present a Sixth Amendment violation.

### 1. Length of Delay

For purposes of the Sixth Amendment, "[t]he length of delay is measured from the earlier of the date of indictment or arrest to the defendant's trial." *United States v. Williams*, 683 F. App'x 376, 383 (quoting *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006)). A delay of more than one year "'generally' satisf[ies] the lengthiness requirement" and triggers the remainder of the analysis. *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). Because Conley was arrested in January 2019, the first factor is met, and the Court must consider factors (2)-(4). *See id.*

### 2. Reason for Delay

Under the second *Barker* factor, "[t]he core task is determining which party shoulders the balance of blameworthiness for th[e] delay." *United States v. Rosse*, 716 F. App'x 453, 464 (6th Cir. 2017) (alteration in original) (quoting *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001)). "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Thornton*, 822 F. App'x at 403 (quoting *Barker*, 407 U.S. at 531). And although "a 'more neutral reason such as negligence or overcrowded courts should be weighted less heavily[,] . . . the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'" *Id.* (quoting *Barker*, 407 U.S. at 531).

According to Conley, "the government had all of the evidence available to it at the time of Mr. Conley's January 2019 arrest," and thus "the only explanation for the several months [of] delay between filing the initial indictment and the second superseding indictment is that the government was engaging in bad faith, harassment, or seeking to gain some tactical advantage."

10

(D.N. 157, PageID.703)  Conley offers no evidence to support this accusation, however; he "has not shown that the superseding indictment was groundless or that it was filed to gain some impermissible tactical advantage." *United States v. Chew*, 497 F. App'x 555, 559 (6th Cir. 2012) ("To the extent the delay . . . was indirectly caused by the filing of the superseding indictment, [the defendant's] speedy trial claim would be strengthened only if the record showed abuse of prosecutorial discretion, such as dilatory purpose or bad faith.").

The Court sees no evidence of deliberate delay by the United States in this case. Moreover, as Conley acknowledges (D.N. 157, PageID.704), a significant part of the delay is attributable to his numerous changes of counsel. (*See, e.g.*, D.N. 99 (rescheduling status conference for 41 days later "[i]n light of . . . substitution of defense counsel" the day before); D.N. 122 (granting defense's motion to continue trial "at least 120 days" after change in counsel))  Nevertheless, the lengthy delay in resolving the issue of competency, as well as the Court's occasional lapses in scheduling, weigh against the government to some extent. *See Thornton*, 822 F. App'x at 403 (quoting *Barker*, 407 U.S. at 531).  Because each side bears some blame for the delay, *see Rosse*, 716 F. App'x at 464, the Court agrees with Conley that this factor is neutral.  (D.N. 157, PageID.704)

    **3.**    **Assertion of Right**

"Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance." *Thornton*, 822 F. App'x at 403 (quoting *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999)).  The third factor "is a measure of how quickly the defendant asserted his right to a speedy trial 'in the context of the overall delay.'" *Id.* (quoting *United States v. Watford*, 468 F.3d 891, 907 (6th Cir. 2006)).

11

Here, Conley mentioned his right to a speedy trial in some of his direct communications to the Court as early as March 20, 2020. (*See, e.g.*, D.N. 55, PageID.210; D.N. 69, PageID.244) The right was not formally asserted, however, until the filing of the instant motion on the eve of trial—suggesting that Conley's motivation was to avoid trial, not expedite it. *See Barker*, 407 U.S. at 534-36 (finding that third factor weighed against petitioner where defendant did not object to continuances until delay was no longer to his strategic advantage). This factor thus does not weigh in Conley's favor. *See id.*

### 4. Prejudice to Defendant

Conley likewise fails to show significant prejudice resulting from the delay. He offers little argument on this point, merely pointing to "the fact that [he] has been incarcerated since mid-2019, without being brought to trial" and asserting that "anxiety and concern" are "evidenced in [his] pro se writings to the Court[ and] arguably highlighted in the psychiatric evaluation filed in December 2020." (D.N. 157, PageID.704-05) Conley's incarceration, however, is largely his own doing: as outlined above, he was initially released on bond and was taken into custody only after being found in violation of his bond conditions. (*See* D.N. 4; D.N. 7; D.N. 29; D.N. 40) And while there is prejudice associated with "living for over four years under a cloud of suspicion and anxiety," the Supreme Court has characterized such prejudice as "minimal." *Barker*, 407 U.S. at 534. Like the petitioner in *Barker*, Conley makes "no claim that any of [his] witnesses died or otherwise became unavailable owing to the delay." *Id.* This lack of significant prejudice, combined with Conley's shared blame for the delay and the timing of his motion, compels the conclusion that no Sixth Amendment violation occurred in this case. *See id.* at 534-36.

**C.      Dismissal With or Without Prejudice**

Because the Speedy Trial Act is violated but the Sixth Amendment is not, the Court must decide whether to dismiss the case with or without prejudice. *See* § 3162(a)(2). In making this determination, the Court considers "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." *Id.*

The offenses at issue are extremely serious. Among other offenses, Conley is charged with transporting a person across state lines for prostitution, kidnapping a second victim, and making violent threats to the second victim's parents. (*See* D.N. 45) The first factor therefore weighs in favor of dismissal without prejudice, as Conley acknowledges. (*See* D.N. 157, PageID.705)

Moreover, the facts and circumstances surrounding the delay are not particularly egregious. This is not a case that has languished on the docket unnoticed: notwithstanding periodic—likely inadvertent—gaps in Speedy Trial Act findings, there have been regular conferences and hearings held throughout the litigation. Nor does the record reflect deliberate delay on the part of the government, as discussed above. Given the complexity of the case, the number of changes in defense counsel (at Conley's behest), the competency proceedings (also sought by Conley), and the unusual circumstances presented by the pandemic, this factor does not weigh in favor of dismissal with prejudice.

Because the first two factors weigh against Conley and he was not significantly prejudiced by the delay, *see supra* Part II.B.4, dismissal with prejudice is unwarranted. *See United States v. Taylor*, 487 U.S. 326, 341-44 (1988) (finding that district court abused its

discretion in dismissing case with prejudice based solely on the impact-of-reprosecution factor where delay did not prejudice the defendant and defendant had contributed to the delay).

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Conley's motion to dismiss (D.N. 157) is **GRANTED** in part. This matter is **DISMISSED** without prejudice pursuant to 18 U.S.C. § 3162(a)(2) and **STRICKEN** from the Court's docket. The trial set for February 6, 2023, is **REMANDED** from the Court's docket. All other pending motions are **DENIED** as moot.

February 1, 2023

David J. Hale, Judge
United States District Court

cc: Jury Administrator